[No. 19560.    Department One.—February 25, 1896.]

# R. A. THOMAS ET AL., APPELLANTS, v. SAN DIEGO COLLEGE COMPANY ET AL., RESPONDENTS.

FORECLOSURE OF TRUST MORTGAGE—DECREE OF SALE—DUTY OF TRUSTEES—DELAY OF SALE—RIGHTS OF BONDHOLDER AND OWNER—ORDER FOR EXECUTION.—Where a trust mortgage to secure bondholders is fore-closed by the trustees, and there is no provision in the decree for delaying the sale of the mortgaged property, it is the duty of the trustees to proceed without unreasonable delay to have the decree executed, and upon their failure to do so, it is the duty of the court, upon the application of a defendant who is a large bondholder and the owner of the mortgaged property, and interested in the execution of the decree, to direct that its execution be proceeded with.

ID.—POSITION OF TRUSTEE—CONTROL OF COURT.—Trustees who foreclose a mortgage for the benefit of bondholders have no personal interest in prosecuting the suit or in enforcing the decree, and are only instruments in the hands of the court, after bringing themselves within its jurisdiction, for the enforcement of the trust, and are peculiarly within the power and control of the court.

ID.—EX PARTE ORDER FOR EXECUTION—MOTION TO RECALL ORDER.—Whether the court erred in granting an ex parte order, without notice to the trustees, or without their consent, for the enforcement of the decree, upon application of a bondholder who is owner of the mortgaged premises, is not material, where the trustees are heard upon a motion to recall the order or to stay its execution; and if the latter motion is properly denied they are not prejudiced by the first order.

ID.—DELAY OF SALE TO ENHANCE BIDS—UNCERTAIN COMBINATION OF STOCKHOLDERS—ENFORCEMENT OF DECREE.—Where the condition of the country affecting the value of the mortgaged property was well known, and ample time had elapsed after the decree was entered to consummate any combination of stockholders to enhance bids upon the property, if such consummation were practicable, the uncertainty of any such combination or agreement being effected is too great to justify further delay in enforcing the decree of sale.

ID.—CONFIRMATION OF SALE—POWER TO ORDER RESALE—PREVENTION OF COMPETITION.—The court has power to refuse to confirm a sale under the decree, and may set it aside and order a resale, where special circumstances have prevented competition, and assurance is given that upon a resale a better price can be obtained sufficient to justify the delay and additional expense.

APPEAL from an order of the Superior Court of San Diego County directing the issuance and execution of an order of sale and from an order refusing to recall the order of sale.    GEORGE PUTERBAUGH, Judge.

The facts are stated in the opinion.

*Trippet & Neal,* and *L. L. Boone,* for Appellant.

The judgment being in favor of plaintiffs, a writ for its enforcement could not be properly issued without their request or consent.   No other party is entitled to such a writ.   (1· Freeman on Executions, sec. 21, et seq; Code of Civil Procedure, sec. 681; *Jones* v. *Spears,* 56 Cal. 165.)   If any of the beneficiaries desired an execution they should have applied to the court for an order directing the trustees to cause the issuance thereof.   (See Pomeroy's Equity Jurisprudence, sec. 428; Civ. Code, sec. 2269.)

*Conklin & Hughes,* for Respondent O. J. Stough.

Courts of equity adapt themselves to the peculiar circumstances of each case.)   *Higginbottom* v. *Short,* 25 Miss. 160; 57 Am. Dec. 198.)   They have authority to carry their own decrees into effect.   (*Newman* v. *Chapman,* 2 Rand. 93; 14 Am. Dec. 766.)   Mr. Stough, as the party that had the largest beneficial interest in the subject matter, had a right to demand the enforcement of the decree.   (*Kelly* v. *Israel,* 11 Paige, 153; Wiltz on Mortgages, sec. 473.)   The affidavit of Boone, one of the attorneys for plaintiffs, gives no good reason for delaying the sale.   (See *McGown* v. *Sandford,* 9 Paige, 290.)

HAYNES, C.—This appeal is by the plaintiffs from two orders made after judgment, the first directing the immediate issuance and execution of an order of sale made upon the *ex parte* application of defendant Stough, and the second an order denying plaintiff's motion asking that the order of sale be recalled, or that its execution be postponed.

The San Diego College Company issued two hundred and ninety-eight bonds for the sum of one hundred dollars each, together with interest coupons thereto attached, and executed to the plaintiffs, as trustees, a mortgage upon several parcels of real estate to secure the same, the most valuable of which is known as the "College

Campus," upon which there was a large building. The above-entitled action was brought to foreclose said mortgage, and a decree of foreclosure was entered therein December 22, 1893. The findings set out the names of the holders and owners of said bonds, and the number held by each, from which it appeared that defendant O. J. Stough was the holder of one hundred and fifty-seven of said bonds, one hundred and thirty-two of which he owned, and the remaining twenty-five he held as collateral security, the college company being the owner subject to the pledge thereof. Defendant Hannahs is the assignee of the college company, an insolvent debtor.

Prior to the commencement of the foreclosure proceedings, and also prior to the insolvency of the college company, defendant Stough became the owner of the mortgaged property, but took it subject to said mortgage, and was, therefore, a necessary party to the foreclosure suit.

The decree directed certain parcels of the mortgaged property to be first sold, and on March 13, 1894, an order of sale was issued, and under it the sheriff sold all the property except that known as the "College Campus"; but this sale, made on May 21, 1894, did not realize enough to pay the interest due on the bonds, and the condition upon which the remainder of the property could be sold was thereby fixed, and the "College Campus" property was afterward advertised to be sold on July 2, 1894, but by direction of plaintiffs' attorneys it was readvertised, and was offered for sale on August 1, 1894, and on that day L. L. Boone and O. A. Trippet (two of plaintiffs' attorneys), "on their own responsibility and not for their clients," bid therefor three thousand dollars, but refused to complete the purchase because, as they claimed, the sale was made without legal notice.

On August 28, 1894, the first of said orders was entered in said cause, upon motion of Conklin and Hughes, attorneys for defendant Stough, but without notice to

counsel for plaintiffs. The order recited that it appeared " to the satisfaction of the court that O. J. Stough, named as defendant in said cause, is the person most largely interested in the enforcement of said decree."

A writ was accordingly issued that day, and counsel for plaintiff moved, upon notice to counsel for defendant Stough, to recall said writ and postpone the sale until the further order of the court, upon the grounds: 1. That said writ was issued without their request, knowledge, or consent; 2. "That it is against the interests of plaintiffs' *cestuis que trust* to have a sale made of the mortgaged premises at the present time"; and 3. " That equity and justice to the bondholders named in the judgment herein demands that the sale of said premises be postponed."

This motion was denied, and plaintiffs appeal from the order denying it and from the *ex parte* order directing the writ to issue. The facts appear in a bill of exceptions.

In support of the second and third grounds of said motion an affidavit made by L. L. Boone was read, to the effect that, as he was informed and believed, the improvements on the " College Campus " property cost forty thousand dollars; that the buildings thereon were designed for college purposes; that their chief value depends upon the use to which they might be put; that it is the opinion of real estate agents that a purchaser could be found at the price of twelve thousand dollars, but that owing to the present depressed financial condition of the country it would take some time to find a purchaser at that price, say six months; that since the last attempted sale the attorneys for the bondholders, other than Stough, have been making efforts among themselves to raise sufficient money to enable them to bid six thousand dollars, but as the principal bondholder, Mr. Groh, lives in Nebraska it would take some time to complete arrangements, in which event affiant believed a bid of six thousand dollars would be made;

but that if a sale were forced immediately not more than three thousand dollars would be obtained.

Appellants contend that a writ for the enforcement of the judgment could not properly issue without their request or consent.

There is no doubt about the general proposition laid down in Freeman on Executions, section 21, that "as the judgment is the property of the plaintiff, he alone, whilst the property remains his, is entitled to exercise dominion over it," and "to allow another to control the writ is to turn the dominion of the property over to some one who is not entitled to it." But it will be observed that the learned author is speaking of cases where the plaintiff "is the only one entitled to the fruits of the judgment"; and in the same section he further says: "A stranger may acquire an equitable right to the benefit of the execution, or to the property upon which it is levied, and such equitable right may, in most cases, give him authority to sue out and conduct the process"; so that it is the ownership of or interest in the judgment, or in the fruits of the execution, or in the property upon which it is levied, which authorizes a party to cause it to be issued.

In *Cortez* v. *Superior Court,* 86 Cal. 274, 21 Am. St. Rep. 37, it was held that a commissioner in partition who is allowed a fee for his services, the amount of which is fixed by the court and made a charge upon the land, is a "party in whose favor judgment is given" within the meaning of the word "party" as used in section 681 of the Code of Civil Procedure.

In *Kelly* v. *Israel,* 11 Paige, 147, cited by respondent, there were several mortgages in favor of different parties, and a decree of foreclosure had been entered in each, and the property ordered sold by a master under one of the decrees, but for the benefit of all. The master, having advertised the sale, postponed it at the request of the complainant's solicitor. One De Launy, the assignee of a junior mortgage for twenty thousand dollars, but who was not made a party because his as-

signment had not been recorded, but who came in and
stipulated to be bound by the decree, thereupon ten-
dered to the complainant the full amount of the three
decrees with interest and costs, upon condition that he
would assign the decrees to him; which offer was de-
clined.   Thereupon Rogers and Sagory, De Launy's
assignors (who had assigned the mortgage as security
only), and De Launy petitioned the chancellor, praying
that the complainant might be required to proceed and
sell the premises, or that he should assign the decree to
De Launy upon payment of the amount due.   An order
was thereupon made permitting such payment, and
authorizing the party paying the same to proceed to sell
the property.   Upon appeal from this order made by
the vice-chancellor, the court, among other things,
said:

"If the complainant neglects to proceed to a sale
with due diligence, the court, upon the application of
any other party interested in the execution of the de-
cree will commit the prosecution thereof to him; or, if
the decree has already been placed in the hands of a
master to be executed, will direct him to proceed to a
sale without delay, notwithstanding any directions he
may receive to the contrary from the complainant or
his solicitor.   Indeed it is the duty of the master, with-
out any special order of the court for that purpose, to
proceed to a sale of the property with all reasonable
diligence, if requested to do so by any party to the suit,
who must necessarily be injured by the delay if the sale
is stayed without a sufficient cause."

In that case the circumstances requiring the action of
the court were stronger than here, and the action of the
court was invoked by petition; but the principle in-
volved there and in the case at bar is the same.   The
case here was also equitable.   The decree required the
sale of the property, and, as no provision was made in
the decree for delaying the sale, it was the duty of the
plaintiffs to proceed without unreasonable delay to have
the decree executed, and upon their failure to do so it

became the duty of the court, upon the complaint of any party to the suit interested in its execution, to direct that its execution be proceeded with. It would be a vain thing to bestow upon a court of equity the power to make a decree which it had no power to enforce, and yet such would be the case if its execution depended upon the pleasure or convenience of the plaintiffs. It is quite true, as urged by appellant, that the trustees were the proper plaintiffs in the action, and that the duty of prosecuting it rested upon them; but it does not follow that they had such absolute control of the action, or of proceedings under it, as is necessarily accorded to those who litigate in their own right and not for the benefit of another. If, for example, they had refused to bring the action to foreclose the mortgage, it appearing that the circumstances made it their duty to do so, such refusal would not have tied the hands of the court or of the bondholders, and thereby prevented a foreclosure. They had no personal interest in prosecuting the suit or enforcing the decree, and were only instruments in the hands of the court, after they brought themselves within its jurisdiction, for the enforcement of the trust created for the benefit of others, and were therefore peculiarly within the power and control of the court. The respondent, O. J. Stough, owned one hundred and thirty-two of said bonds, and held twenty-five more as collateral security for a debt of the College Company, and was found by the court to be the person most largely interested. But it is contended that his interest was adverse to that of the other bondholders inasmuch as he was the owner of the mortgaged property, subject to the mortgage, and therefore interested in having the property sold for a small sum, in order that he might redeem at a small cost.

But the fact that defendant Stough was the owner of the mortgaged property is an additional reason in support of his right to make the application, as it shows that he was not only interested as a bondholder, but was interested in the property to be sold, and the ques-

tion was therefore not one affecting his *right* to apply for the issuance of the order of sale, but one to be considered by the court as a ground for granting or refusing his motion.

But it is contended that the first order was granted upon the *ex parte* application of defendant Stough, and that plaintiffs have not consented to or ratified the order.

Whether the court erred in granting the order without notice need not be considered, as plaintiffs were heard upon the motion to recall the order, or to stay its execution; and if their motion was properly denied they were not prejudiced by the first order.

The interest of Mr. Stough was known from the beginning. He was made a party because he held the legal title to the mortgaged premises. Nor does there appear to have been any change in the condition of the property, or in the financial condition of the country between March 13, 1894, on which date an order of sale was issued at plaintiffs' request, and October 5, 1894, when the motion to recall the order was denied; and between those dates, and after the sale of the other property, the "College Campus" was twice advertised for sale under plaintiffs' instructions, first for July 2d, and then for August 1st, and on the last-mentioned day the property was struck off to Boone and Trippet, who afterward refused to complete their purchase because of some alleged irregularity or defect in the notice of sale. If July or August were a proper time to sell said property, it is difficult to understand why it might not properly be sold in September or October. In *McGown* v. *Sandford,* 9 Paige, 290, it was held that the fact that property was depressed in consequence of the general derangement of the finances, affidavits of the defendants and others of their belief that the politics and finances of the country would be settled at an extra session of Congress, so as to greatly increase the value of property, were insufficient to justify the court in ordering a suspension of the sale of mortgaged premises under a decree of foreclosure; and in *Astor* v. *Romayne* (1814), 1 Johns.

Ch. 310, it was decided that the actual existence of war, where there was no immediate danger of an invasion of the place where property was advertised to be sold, formed no sufficient ground for suspending the sale of mortgaged premises under a decree.

Of course what has been said does not conflict with the well-established power of a court to refuse to confirm or to set aside a sale where special circumstances have prevented competition, and assurance is given that upon a resale a better price can be obtained sufficient to justify the delay and additional expense.

The uncertainty of any agreement or combination of the stockholders being effected, as suggested, is too great to justify a postponement of the sale. The condition of the country affecting the value of the property was well known long before, and ample time had elapsed after the decree was entered to consummate the arrangements, if such consummation were practicable.

The orders appealed from should be affirmed.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the orders appealed from are affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.