[Civ. No. 2159. Second Appellate District, Division Two.—July 30, 1919.]

# H. B. McAULIFF, Appellant, v. JOSEPH E. McFADDEN et al.; Respondents.

[1] APPEAL— ALTERNATIVE METHOD — RECORD REQUIRED IN BRIEFS.— Where an appeal is taken under the alternative method, the appellant is only required to print in his brief such portions of the record as may be necessary to present to the appellate court, fairly and lucidly, the points upon which he relies.

[2] ID.—FAILURE TO PRINT PLEADINGS—FACTS ADMITTED BY PLEADINGS NOT BEFORE COURT.—Where an appeal is taken under the alternative method, and the entire complaint and entire answer is not printed in appellant's brief, the appellate court cannot consider his claim that certain facts, material to the questions presented, were admitted by the answer.

[3] VENDOR AND VENDEE—CONTRACT FOR SALE OF REAL PROPERTY— CONTEMPORANEOUS COLLATERAL AGREEMENT—CONSTRUCTION OF.— In this action for the reformation of a contract, for the recovery of a given sum alleged to have been paid by plaintiff on the contract, and for a further given sum as damages alleged to have been suffered by reason of the defendants' breach of the contract, the contract entered into by plaintiff with the defendants, who were the record owners of the lots, for the sale and purchase thereof, and the collateral contract executed contemporaneously therewith by such defendants wherein it was provided that payment for such lots was to be made out of funds to be paid by such defendants to plaintiff for sign painting to be done for them, constituted but one transaction and evidenced but one single contract.

[4] ID.—CONTEMPORANEOUS EXECUTION OF PAPERS — CONSIDERATION TOGETHER.—Where several papers covering the same subject matter are executed by or between the same parties at the same time, all are to be considered together, and with the same effect as if all had been incorporated in one document.

[5] ID.—WANT OF AUTHORITY TO EXECUTE CONTRACT—EQUITY—RIGHT OF PLAINTIFF TO MONEY WITHHELD.—Where the defendants, who were the record owners, had no authority to bind their undisclosed co-owners by the collateral agreement wherein it was provided that payment for the lots was to be made out of funds due the plaintiff for sign painting done for such record owners, and such collateral agreement was not ratified by such co-owners, there was no contract binding upon the plaintiff, and in such action in equity the court should have awarded judgment against

the defendants who signed the agreement for the amount which they had withheld from plaintiff out of his earnings for sign painting and applied on the purchase price of the lot.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

Herbert N. Ellis and C. B. Ellis for Appellant.

Riley & Heskett for Respondents.

FINLAYSON, P. J.—This is an action for reformation of a contract, for the recovery of $421.07 alleged to have been paid by plaintiff on the contract, and for the further sum of two thousand dollars damages alleged to have been suffered by reason of the defendants' breach of the contract. From a judgment in favor of defendants, plaintiff appeals. The contract was one for the sale to plaintiff of certain real property.

The appeal is prosecuted under the "alternative method," and a lengthy typewritten reporter's and clerk's transcript is presented to us as the record on appeal. No part of the record is printed in respondents' brief, or in any supplement thereto. In appellant's brief there is printed the findings, in full, fragments of the pleadings, and a few excerpts from the testimony of the witnesses. [1] As appellant is only required to print in his brief such portions of the record as may be necessary to present to this court, fairly and lucidly, the points upon which he relies (*De Bock* v. *De Bock* (Cal. App.), 184 Pac. 890), we think enough is printed in appellant's brief to necessitate a consideration by us of the principal question presented by his appeal. [2] We cannot, however, consider appellant's claim that certain facts, material to the question mainly relied upon by him, are admitted by the answer. Whether such facts are so admitted could be determined only from a careful comparison of the entire complaint with the entire answer. As neither pleading is printed in full in the briefs, we are unable to say that the answer makes any of the admissions claimed by appellant.

From the findings—printed in full in appellant's brief—
and from such of the evidence as is therein printed, we are
able to glean the following: Prior to January 27, 1913,
plaintiff had been furnishing to defendants McFadden and
Buxton, copartners, sign paintings in considerable quanti-
ties, for which he was entitled to receive pay at certain
rates. On the date last mentioned, defendants McFadden,
Buxton, Strahlmann, and Mayer, as vendors, but through
and "in the name of the defendants McFadden and
Buxton," entered into a written contract with plaintiff—
hereafter referred to as the formal written contract of
sale—whereby plaintiff, as vendee, agreed to purchase from
the vendors, and the latter agreed to sell, lots 32 and 33
in block G of McFadden and Buxton's North Park, in
the city of San Diego. Strahlmann and Mayer are not
mentioned in the contract as parties thereto. This particu-
lar written contract provided that the purchase price,
$1,350, should be paid as follows: Fifty dollars cash, and
the remainder in monthly installments of fifty dollars each
on the first day of each and every month thereafter, until
the total balance of one thousand three hundred dollars
should be paid, deferred payments to bear interest at
seven per cent, and plaintiff to pay all taxes and assess-
ments. According to the terms of this contract, plaintiff
was obligated to pay at least fifty dollars per month on
the first day of each and every month, commencing Feb-
ruary 1, 1913, and ending March 1, 1915. The action
appears to have been commenced after the last-mentioned
date. So that if this was the only contract relative to
the sale of the lots and the payment of the purchase
price—that is, if this document contained the whole agree-
ment respecting the sale—then plaintiff was in default, for
he had not paid more than $421.07 when the action was
commenced, and, consequently, he is not entitled to any
relief, unless, as he claims, another writing, signed by
McFadden and Buxton, was not only a part of the entire
contract, but introduced a new element respecting the
manner of paying the purchase price.

At the time when the formal written contract of sale was
entered into, it was contemplated by plaintiff and by
McFadden and Buxton that the former would continue to
furnish sign paintings as theretofore. Pursuant to such

expectation, and at the same time when the formal contract
of sale was executed, plaintiff and McFadden and Buxton
made another contract—a contract which hereafter will be
referred to as the collateral agreement. This collateral
agreement was evidenced by a writing signed by McFadden
and Buxton, and, though not signed by plaintiff, was un-
questionably acted upon by him. This document is as
follows:

"San Diego, California, Jan. 27, 1913.
"Mr. H. B. McAuliff,
     "City.
"Dear Sir: In consideration of the contract entered into
this date whereby you have agreed to purchase lots 32 and
33, Block G, North Park, for the sum of Thirteen Hundred
Fifty Dollars, it is agreed and understood that all payments
to be made on this property shall be one-third the monthly
bills for sign painting rendered from you and in no case
will we ask for more. Said payments to be credited on the
first of each month.

"Yours very truly,
"McFadden & Buxton,
"By G. E. Buxton."

Buxton, who was the only witness for defendants, testified
that the two contracts "were made at the same time; . . .
it was the mutual understanding between us [plaintiff and
McFadden and Buxton] that the deal [the contract for
the sale of the two lots] wouldn't have been made without
having this agreement"—the collateral agreement. Bux-
ton, in his testimony, also said that it was not contemplated
that there should be any other method of paying for the
lots than the sign painting that plaintiff was to do. Mc-
Fadden and Buxton were the record owners of the lots
and had the handling of the property, though it is a fair
inference from the facts appearing in the court's findings,
together with those disclosed by the brief excerpts from
the evidence printed in appellant's brief, that, at the date
of the contract of sale, the two lots were owned by the
four defendants—McFadden, Buxton, Strahlmann, and
Mayer. Plaintiff testified as follows: "He [Buxton] . . .
says: 'You have been doing a lot of work for us people
[referring to a time immediately preceding the contract of
purchase and sale]; we think you ought to reciprocate by

buying a lot.' I told Buxton that I didn't want a lot; that I didn't think I could afford to buy a lot. 'Well,' he says, 'We can make this so easy that it won't cost you a cent'. . . . Mr. Buxton told me, and I understood him fully, that they would have enough work so that I could pay fifty dollars a month toward the lot, being one-third of the amount of work they were likely to have, and the two-thirds would be paid in cash.'' This testimony is not contradicted by any evidence printed in the briefs.

Plaintiff paid his vendors a total of $421.07. From the findings and the parts of evidence printed in the briefs, it is clear that this aggregate sum of $421.07 was made up of payments made in the manner provided for in the contemporaneous collateral agreement. Plaintiff made all the signs and did all the sign painting that he was asked to do after the execution of the formal contract of sale and the contemporaneous collateral agreement. He was eager to do anything the defendants had for him to do, and never refused a job for them. It is a reasonable inference from such of Buxton's testimony as is printed in appellant's brief that the real estate business fell off shortly after the contract of sale; that for this reason McFadden and Buxton had no property for sale upon which to paint advertising signs, and that, for this reason, the work which they had contemplated having for plaintiff, when the contract of sale was made, fell off, and, hence, the amount thereafter earned by plaintiff from his sign painting was not sufficient to enable him to make the payments on the lots in the manner provided by the contemporaneous collateral agreement.

The court found that there was no agreement between plaintiff and any of the defendants that the latter, or any of them, would purchase from plaintiff signs or sign paintings subsequent to the contract of sale; that the formal written contract of sale, executed by plaintiff and the record owners, McFadden and Buxton, was complete within itself and contained all the conditions of the agreement of sale; that the contract of sale was voluntarily entered into by plaintiff; that no fraud, misrepresentation, deceit, or bad faith was practiced upon him by defendants, or any of them, and that no provision or condition of the formal written

contract of sale was omitted through error, mistake, fraud, deceit, or oversight. The court also found that defendants have performed all of the conditions of the contract of sale to be by them performed, but that plaintiff has failed to perform the terms and conditions of the contract of sale on his part to be performed.

In its conclusions of law, presumably followed by and incorporated in the judgment—though the latter document is not printed in any of the briefs—the court finds that defendants Strahlmann and Mayer, to whom McFadden and Buxton had assigned their interests before the action was commenced, are entitled to recover from plaintiff $1,182, as the unpaid balance of the purchase price, and that if plaintiff fails to pay the same within thirty days from the entry of judgment, all his right and title to the lots shall be foreclosed.

[3] The finding that the formal written contract of sale was complete within itself and contains all the conditions of the agreement of sale, and the finding that plaintiff has failed to perform the terms and conditions of the contract of sale on his part to be performed, can be sustained only upon the theory that the two instruments were not parts of one transaction and did not evidence one single contract. But this, we think, is an erroneous theory. The two instruments, the formal written contract of sale and the contemporaneous collateral agreement, signed by the vendors McFadden and Buxton and acted upon by plaintiff, relate to the same subject matter and were executed as parts of one transaction, the latter expressly referring to the former, and reciting that it was made in consideration of the execution of the formal contract of sale. The language of the collateral agreement is: "It is agreed . . . that *all* payments [on the contract of sale] . . . shall be one-third of the monthly bills for sign painting rendered from you [plaintiff], and in no case will we ask for more." This language, read in the light of the attendant circumstances, as disclosed by the evidence printed in appellant's brief, and taken in connection with the provision of the formal written contract of sale calling for the payment of fifty dollars per month until the full amount of one thousand three hundred dollars shall have been paid, means that each

monthly installment of fifty dollars, together with interest and the sums due from plaintiff for taxes and assessments, shall be paid out of moneys to be earned by plaintiff from sign painting to be done by him for the record owners McFadden and Buxton, and implies that plaintiff shall be given enough sign painting to enable him to earn thereby such amounts that he could receive at least two-thirds of the amount earned in cash, and allow the remaining one-third to be credited on the monthly installments of the purchase price of the lots, as such installments fell due.  [4]  It is a familiar rule, recognized by all courts, that where several papers covering the same subject matter are executed by or between the same parties at the same time, all are to be considered together, and with the same effect as if all had been incorporated in one document.  (Civ. Code, sec. 1642; *Ingoldsby* v. *Juan*, 12 Cal. 564, 577.)  The several contracts must be so construed as to give effect, as far as practicable, to every part of each instrument.  (Civ. Code, sec. 1641; *Flinn* v. *Mowry*, 131 Cal. 481, 484, [63 Pac. 724, 1006].)

[5]  The judgment of the lower court cannot successfully be defended upon the theory that McFadden and Buxton, the sole record owners, had no authority to bind their undisclosed co-owners, Strahlmann and Mayer, by the collateral agreement.  Strahlmann and Mayer are not mentioned in the formal written contract of sale.  As the court finds, that contract "was made by defendants [i. e., the four defendants Strahlmann, Mayer, McFadden, and Buxton] through and *in the name of* McFadden and Buxton," the owners of record.  Plaintiff dealt with the record owners and no one else.  If these record owners had no authority to bind their undisclosed co-owners by the collateral agreement, or if the collateral agreement was not ratified by the latter, then there was no contract binding on appellant.  For appellant unquestionably contracted for, and supposed he would receive, the entire fee-simple title to the lots, not merely an undivided one-half, or such undivided part of the whole title as might be owned by but two of the four co-owners.  It was for the complete fee-simple title that he agreed to pay.  And he agreed to pay for it in the manner provided by the contemporaneous collateral agreement that was signed by and given to him by the only

owners of record—the persons, and the only persons, with whom he dealt. That is what he bargained for—that and nothing else. He, and those with whom he had all his dealings, the two record owners, understood that he was to pay for the lots as provided in the contemporaneous collateral agreement, and not otherwise, and that thus he was to become entitled to own the two lots in severalty. If, therefore, McFadden and Buxton had no authority to bind their undisclosed co-owners, then the contract did not give appellant what he bargained for, and in that event it would not be binding upon him, he would not be in default, and the court should have given him judgment against McFadden and Buxton, at least, for the sum of $421.07, which the latter, withholding from plaintiff out of his earnings for sign painting, had applied on the purchase price of the lots. The action was a suit in equity, and the court could have retained jurisdiction to adjust all the rights and equities of the respective parties that were within the issues and disclosed by the evidence. If, on the other hand, McFadden and Buxton were authorized to contract with plaintiff in their own name, but on behalf of themselves and their co-owners, Strahlmann and Mayer, then there was but one contract, and the collateral agreement, without any reformation of the formal written contract of sale, must be taken to be a part of the whole contract—a contract which, as already shown, permitted appellant to make his payments on the lots out of such future earnings as he might make in painting signs for the record owners, McFadden and Buxton.

We have not undertaken to determine the precise nature of all the rights of the respective parties to the action, nor what judgment should be entered herein. That would involve a consideration of facts and questions not presented by or argued in the briefs on file. For this reason we content ourselves with saying that, for reasons already given, certain of the findings are contrary to the evidence and inconsistent with other facts found by the court, and, upon the record before us, the judgment as entered is clearly erroneous.

For these reasons the judgment should be reversed and the case retried. It is so ordered.

Sloane, J., and Thomas, J., concurred.