In the matter of ELIHU H. COOLEY et al., charged with contempt.

[Decided January 29th, 1924.]

1. Where a defendant who has been directed to convey lands to complainant, conveys instead to a stranger, such disobedience to the decree constitutes both a civil and a criminal contempt.

2. Neither the belief that complainant's conduct had been such as legally to result in an abandonment or loss of complainant's rights under the decree, nor the advice of counsel, constitutes excuse for the contempt; although both factors are to be considered in determining the degree of the offense.

3. An attorney is privileged to state to his client his opinion that a certain course of conduct will be proper and not in violation of a decree; but if the attorney goes beyond this and participates in the client's conduct, or even advises the client to do the act in question, he does so at his peril, and if the client be guilty of contempt the attorney is likewise guilty.

4. Whether acquiescence or consent by complainant to the disobedience of the decree may constitute complete excuse in proceedings for criminal contempt—*Quære?*

5. If complainant-vendee, after decree for specific performance, refuses to perform on his part, defendant-vendor (if not desirous of enforcing the decree) may apply, in the cause, for relief from the decree and permanent stay of proceedings.

On prosecution for alleged contempt.

*Mr. Augustus C. Nash,* for the prosecution.

*Mr. Conover English* and *Messrs. Smith & Slingerland,* for the respondents.

BUCHANAN, V. C.

By the final decree of this court, entered February 24th, 1922, the respondent Elihu H. Cooley was directed to make conveyance of certain lands and premises to Mary E. McVoy, by good and sufficient deed of conveyance. From this decree Cooley appealed, but unsuccessfully, and decree of affirmance was entered in the court of errors and appeals on June 19th, 1922, and *remittitur* was filed in this court on July 24th, 1922.

Shortly thereafter Cooley executed and tendered to Mrs. McVoy a deed which purported to convey the premises subject to an inchoate right of dower of Bertha Baumann. The decree was by way of specific enforcement of a contract of sale made by Karl Baumann alone—his wife, Bertha, not having joined therein—and the premises having thereafter been conveyed by Baumann to his wife and by her to Cooley, with no reservation of any inchoate right of dower. See *McVoy* v. *Baumann, 93 N. J. Eq. 360; Ibid. 638.* This deed Mrs. McVoy refused to accept.

On August 29th, 1922, Cooley executed and acknowledged a deed for the premises in question to Ruth Naugle (another of the present respondents), notwithstanding the decree aforesaid. Mrs. Naugle, notwithstanding she knew of the decree (having been informed thereof by her counsel, M—), accepted the deed and thereafter asserted ownership thereunder and resisted the efforts of Mrs. McVoy to obtain possession.

Naugle's counsel, M—, was the same individual who had been solicitor and counsel for Cooley in the specific performance suit. He advised and participated in the drafting, execution and delivery of the deed of August 29th, 1922, by Cooley and the acceptance thereof by Mrs. Naugle. This

course of action, it will be observed, was more than a non-performance of the command of the decree—more than a negative disobedience—it was a positive disobedience, and by it Cooley put it out of his power to comply with the decree.

That this conduct in fact constituted a contempt is, it seems to me, so clear as practically to admit of no argument. The contention which was put forward on the hearing was that by reason of certain facts (hereinafter mentioned) there had been an abandonment by Mrs. McVoy of her rights under the decree, and that hence disobedience to, and active disregard and violation of, the directions of that decree would not constitute contempt.

Assuming—but by no means deciding—that acquiescence or consent by Mr. McVoy to the doing of the acts in question would constitute a valid excuse and defence in a punitive proceeding for contempt (as the present proceeding is), the evidence utterly fails to show any such consent or acquiescence. There had in fact been no abandonment by Mrs. McVoy of her rights under the decree. It has heretofore been adjudicated upon substantially the same evidence that there had been no such abandonment even as long thereafter as September, 1923. See *McVoy* v. *Baumann, 1 N. J. Adv. R. 1529* (the opinion in this court has not yet been reported). The most that can be said is that M— and his clients believed that there had been an abandonment, and, even so, it must be observed that they arrived at such belief upon very scanty grounds—apparently the wish was father to the thought. It is pointed out in *Kempson* v. *Kempson, 61 N. J. Eq. 303* (at *p. 326*), that, assuming that acquiescence or consent by complainant may excuse disobedience of a decree, it is at least requisite that such acquiescence or consent be very clearly and positively proven. M— assumes responsibility in the matter. He says, as do the Naugles, that they acted on his advice and had no thought that their conduct was a contempt. (Cooley has at all times been a non-resident and did not appear.) That respondents acted on the advice of counsel is no defence to contempt proceedings (*West Jersey Traction Co.* v. *Camden, 58 N. J. Law 536*); neither is the fact that

they had no disrespectful intent necessarily a defence; although both of these factors may well be considered in extenuation and mitigation of punishment. That the act done was a violation of the court's decree and that respondents intended to do that act, are facts sufficient to establish a contempt; the other factors may influence the determination ·of the degree or character of the contempt.

The evidence shows that Mr. and Mrs. Naugle were acting together in the matter; that they intended to and did accept the deed in question and refuse delivery of the premises to Mrs. McVoy; that they knew of the decree, and hence, that they knew that they were participating in an act which was an active violation of the decree and a contempt, even though they did not realize or comprehend the legal significance of their conduct in that behalf. I am satisfied that they had no such realization or comprehension; that they were guilty of no intentional disrespect to the court; that they acted on ·the advice of their counsel and believed that Mrs. McVoy had abandoned her rights under the decree. I find them guilty of contempt, but entitled to lenience in the matter of punishment.

As to the respondent Cooley, jurisdiction not having been acquired over his person in this proceeding, no adjudication of contempt can now be made as to him.

With regard to the respondent M—, it is evident from what has been said that he was the prime mover in this violation of the decree, both as to the making of the deed by Cooley and the acceptance by the Naugles. His explanation of his conduct is most singular. He says that he thought there had been an abandonment by Mrs. McVoy of her rights under the decree and that therefore the decree was at an end. He knew, of course, that there had been no express or explicit abandonment by Mrs. McVoy; he knew that at most his idea that there had been such abandonment by her was a judgment or conclusion of his own as to the result or effect of the intermediate circumstances. Those circumstances, as he explained them, were that Mrs. McVoy's solici-

tor had refused to accept the deed tendered by him on June 23d, 1922; that he thereafter notified her solicitor that the tender of that deed would be kept open until some time in ·July, but no longer; that the deed was not accepted within this time, nor was there any payment into court by Mrs. McVoy of the balance of the purchase price as required by the decree; that inasmuch as the decree directed performance by both parties within ten days from its date he felt justified in deciding and declaring that Mrs. McVoy had no further rights, and in acting upon that assumption, as he thereafter did in the matter of conveying to the Naugles; he disavows any intentional disrespect toward the court and earnestly contends that there was no violation of the decree, and hence no contempt.

He offered in evidence the correspondence between himself and Mrs. McVoy's solicitor, covering a period from June 24th, 1922, to September 15th, 1922. By these letters it appears as explicitly as can possibly be imagined that M— was insisting that Mrs. McVoy should accept the deed, subject to the dower encumbrance, and do so promptly, otherwise Cooley would consider her rights as ended and that on the other hand Mrs. McVoy's solicitor was rejecting that deed as improper and demanding a deed in accordance with the decree. He knew therefore that there was no intentional abandonment by Mrs. McVoy, and no matter how strong was his own belief that she had lost her rights, he knew she did not believe she had lost them; he knew that he was assuming to act, not on a thing he knew as a *fact,* but on his *opinion* as to a matter of law. Indeed, in his last letter (September 15th, 1922) he says, after speaking of the tender of the deed and its refusal: "This, in my *opinion,* constitutes a· rejection of the terms of the decree by complainant, and leaves the title to, and ownership of, the lands in Cooley." (The italics are mine.)

Now, in the face of the facts as he knew them, and of the judicial opinions in the case, and the terms of the decree, how could any competent solicitor arrive at the opinion that

a deed subject to a dower right in Mrs. Baumann was a deed in compliance with the decree? She and her husband had both conveyed to Cooley, without reserving any such dower right. Her equitable right, if any she had, to a portion of the purchase price had been provided for, by her own request and consent, under the clause of the decree that the purchase-money be paid into court so that she might have opportunity to prove how much, if any, of it should be paid to her as compensation for her dower right. However, I cannot doubt but that M——, in fact, had this opinion, and that he also had the opinion that Mrs. McVoy, by refusing this deed, had lost her rights.

But even so, he knew, as I have said, that these were only his opinions, and that he was matching his opinion against that of Mrs. McVoy's solicitor. It had just been demonstrated to him in the result of the suit, that in that instance the latter's opinion as to matters of law had been better than his own. How could he dare to advise and instruct his clients to act in disobedience to a decree upon the strength of what he knew was only his own opinion. He knew, or as a lawyer ought to have known—especially since he was assuming to give his clients legal advice upon this point—that in so doing they would act at their peril, and that he in advising them so to do was acting likewise at his own peril. An attorney may advise his client that in his opinion an order is invalid, or has become ineffective, or that rights under it have been lost, or that a certain act will not be a disobedience or a contempt. This is both his privilege and his duty as a lawyer to his client. But when he goes further and advises the client to do the act he goes beyond his privilege, and if the act is a disobedience and contempt he is equally guilty with his client. *Cf. In re Noyes, 121 Fed. Rep. 209; Anderson v. Comptois, 109 Fed. Rep. 971.*

A decree for specific performance is, of course, operative and binding upon both parties; the decree is that complainant perform as well as defendant. Where either party desires to avoid the effect of the decree because of matters arising

subsequent to the decree (such as settlement between the parties, refusal or neglect of the other party to perform, or inequitable conduct of the other party), the proper course is to apply in the cause for a permanent stay of all proceedings. *Rosenstein* v. *Burr, 83 N. J. Eq. 491. Cf.,* also, *Hudson Trust Co.* v. *Boyd, 80 N. J. Eq. 267; Smith* v. *Smith, 84 N. J. Eq. 13; Barnett Foundry Co.* v. *Iron Works Co., 85 N. J. Eq. 359.* That is the course which M— should have advised his clients to pursue in the present instance, instead of assuming himself the right to determine the legal result of the conduct of the parties subsequent to the decree.

M—'s explanation therefore is not a valid excuse for his conduct. I believe, however, his explanation in fact is true, and I acquit him of intentional disrespect or flagrant contempt. He is nevertheless guilty of an actual contempt.

This disposes of the findings as against all the respondents. The determination of the punishment which should be imposed may await somewhat further consideration.