[Civ. No. 24397. Second Dist., Div. One. Nov. 28, 1960.]

ECKER BROTHERS (a Partnership) et al., Appellants, v. ARTHUR A. JONES et al., Defendants; JOSEPH PESKIN et al., Respondents.

Hahn & Hahn and Loren H. Russell for Appellants.

Richards, Watson, Smith & Hemmerling for Respondents.

FOURT, J.—This is an appeal from an order granting a writ of enforcement and from an order directing that a building be removed within a specified time after sale.

Plaintiffs, who are building contractors, brought an action on December 13, 1957, for money and for the foreclosure of a mechanic's lien. On January 31, 1958, a stipulation was filed that a judgment could be rendered against the defendant, California Duplicating Company, Inc., for $26,008.07. Joseph and Beckie Peskin, Arthur A. Jones and Coast Fabricators, Inc., filed an answer to the complaint. An amended complaint was filed on May 14, 1958, wherein plaintiffs sought a money judgment against *each and all of the defendants*; it was further set forth that the defendants and *each of them* claimed some right, title or interest in or to the real property, building and premises particularly described by metes and bounds and lot references and that the claim of defendants, and *each of them* to the same was junior, subsequent to and *subject to plaintiffs' claim of lien.* Furthermore, it was alleged that the *whole of said property* was required for the convenient use and occupancy of the build-

ing and improvements situated *thereon.* It was also alleged that defendants and *each of them* requested the plaintiffs to furnish the materials and construct the building in the sum of $37,274.38 and that defendants, *and each of them,* promised and agreed to pay the plaintiffs; that $11,266.31 had been paid on account and that defendants and *each of them* owed plaintiffs the sum of $26,008.07. In a second cause of action the plaintiffs alleged that they entered into a written contract with defendants and *each of them* wherein plaintiffs were to furnish materials and construct a building and that the defendants and *each of them* agreed to pay plaintiffs $37,274.38. In a third cause of action it was set forth that there was a written contract under which plaintiffs were to construct a building and defendants, and *each of them,* agreed to pay plaintiffs the sum of $37,274.38; that the contract was breached by the defendants to the damage of plaintiffs in the sum of $37,274.38. In a fourth cause of action, plaintiffs alleged that defendants, and *each of them,* were indebted to the plaintiffs for materials and services furnished by plaintiffs to defendants in the amounts heretofore indicated. The fifth cause of action was upon an open book account for the same amounts as heretofore set forth and the sixth cause of action was later dismissed. The prayer of the amended complaint called for a money judgment against *each of the defendants,* that such sum be made a lien against the land and premises and the building, that so much of said land and/or building be sold according to law and the practice of the court and the proceeds applied on the amount found due to plaintiffs; that plaintiffs have execution against defendants, and *each of them,* for any deficiency, that the *defendants be barred and foreclosed of all right, title and interest in and to every part and parcel thereof,* that it be decreed that claims of defendants be subject and junior to the claims of plaintiffs.

The defendants, Jones, Coast Fabricators, Inc., and the Peskins, filed an answer to the amended complaint and thereafter an amendment to that answer and a counterclaim. The answering defendants therein set forth that Jones and Coast Fabricators, Inc., were the owners of the real property in question; that after the completion of the alleged construction work Jones and Coast Fabricators, Inc., sold and conveyed the real property to Joseph Peskin and Beckie Peskin, who are now the owners; that none of said answering defendants had any knowledge of any alleged improvements or

of any contract between plaintiffs and California Duplicating Company, Inc., or of the performance of any labor or the furnishing of any materials until after the plaintiffs' action was filed. Further, that the plaintiffs had entered into the agreement with the lessee (California Duplicating Company, Inc.) of the property to construct a building without the knowledge or consent of the answering defendants.

In the pretrial conference order it is set forth that the plaintiff, a building contractor, seeks recovery of the balance due on a construction contract entered into between plaintiff and California Duplicating Company, for the construction of a building on the real property in question; that plaintiffs claim a mechanic's lien against the real property and that the agents of the defendants promised to pay plaintiffs. A building was constructed upon the real property belonging to Arthur A. Jones and Coast Fabricators, Inc. The premises were occupied by California Duplicating Company, Inc., under a lease dated February 20, 1956, executed by Jones and Coast Fabricators, Inc., as lessors to California Duplicating Company, Inc., as lessees. At the time of the execution of that lease Monterey Equipment Company had an option to purchase the premises dated February 20, 1956. The option to purchase was assigned to defendants, Joseph Peskin and Beckie Peskin, on January 21, 1958, and said Peskins thereafter exercised their option and purchased the property and now are the owners thereof. It is further set forth that Jones and Coast Fabricators hold a deed of trust to secure a portion of the purchase price. Further, that Jones, Coast Fabricators, Inc., and the Peskins are defendants solely because of their interests in the real property on which plaintiffs claim a lien.

A trial was had and judgment rendered and filed on May 26, 1959. The judgment is fully supported by the findings on each issue involved. The judgment provided, among other things, that plaintiffs have judgment against California Duplicating Company, Inc., for the amount requested and that plaintiffs take nothing against the defendants, Joseph Peskin and Beckie Peskin, Arthur A. Jones or Coast Fabricators, Inc.; that plaintiffs have a lien upon the building constructed by them on the real property "down to the surface of the ground, including but not limited to roofs, doors, windows, walks and ramps, for the amount due to plaintiffs" from California Duplicating Company, Inc., and "That if the defendant, CALIFORNIA DUPLCATING Co., INC., does not within

a period of ninety days from and after the entry of judgment herein pay and discharge said lien, said building, down to the surface of the ground, be sold according to law and the practice of this Court and that any party to this action may be a purchaser at such sale and that the proceeds of sale be disbursed as herein provided; that said Sheriff shall execute a Certificate of Sale of said building to the purchaser or purchasers; that such purchaser or purchasers of said building shall have a reasonable time after said sale within which such purchaser or purchasers may remove said building from said premises, the extent of which time may be fixed hereafter by order of this court upon proper application therefor; . . ." It was also adjudged "That the amounts due to the plaintiffs are not a lien upon or against the interests of defendants JOSEPH PESKIN, BECKIE PESKIN, ARTHUR A. JONES and COAST FABRICATORS, INC., in the real property or any portion thereof upon which said building is situated, as hereinafter described; that the title and interests of said ARTHUR A. JONES and COAST FABRICATOR, INC., as beneficiaries of the deed of trust on said real property, and the title of JOSEPH PESKIN and BECKIE PESKIN in and to said real property, not including said concrete block building, are hereby quieted and confirmed against said claim of mechanic's lien heretofore recorded and asserted by plaintiffs and against any or all claims of plaintiffs, and plaintiffs are barred and enjoined from hereafter setting up or asserting any claim or lien against or upon the real property hereinafter described"; and that defendants last named have their costs of suit from the plaintiffs. In short, the Peskins, Jones and Coast Fabricators, Inc., prevailed in every matter in dispute between them and the plaintiffs.

There was no appeal from that judgment and it is now, and was at the time of the orders in question, final.

On September 28, 1959, the Peskins gave a notice of motion for an order directing the issuance of a writ of enforcement and a notice of motion for an order fixing a time for removal of the building by a purchaser and further that the right of the purchaser of such building should lapse, expire and be waived unless the building was removed within the time so fixed. An affidavit in behalf of the Peskins was filed wherein it was set forth that judgment was entered on May 28, 1959, which judgment provided that in the event California Duplicating Company, Inc., should not pay and discharge the lien within ninety (90) days from the date of entry of the judg-

ment that the building be sold down to the surface of the ground; that California Duplicating Company, Inc., had not paid or discharged the lien and that no writ of enforcement had been applied for by plaintiff; that the real property upon which the building was constructed is improved by two buildings, one of which is a steel building and one of which is the concrete block building constructed by the plaintiffs; that the buildings adjoin each other and the concrete block building is so constructed that there is no wall between them for a substantial distance; that the buildings were used as a unit; that the buildings have been unoccupied for approximately two years and no income has been derived therefrom; that the taxes on the real property are in excess of $122.47 per month ($1,469.64 annually); that the payments on the encumbrances on the property is in the sum of $1,000 per month ($12,000 annually); that the reasonable rental value of the real property is in excess of $1,500 per month ($18,000 annually); that the Peskins have been unable to rent the property during the litigation and are now unable to rent it or sell it due to the lawsuit and the uncertainties as to whether the concrete block building will be removed or will remain on the property; that delay in the sale and removal of the concrete block building will continue to cost the Peskins in excess of $50 per day ($18,250 annually). The affiant described the construction of the building as being on a concrete foundation imbedded in the ground with a concrete slab, that steel reinforcing rods tie the building together; that said building could be removed within 15 working days. The matters set forth in the affidavit were uncontradicted.

The motions were heard on October 2, 1959, and the parties were given an opportunity to file briefs. On October 21, 1959, the court granted the motion for a writ of enforcement. On the same date the court granted the motion for an order fixing the time of removal of the building and ordered that the building was to be removed within 20 days after sale and that all rights of the purchaser should terminate if the building was not removed within said time. Evidence was introduced as to what would be a reasonable time for removal of the building after the sale.

Plaintiffs have appealed from the orders last mentioned. The plaintiffs filed a motion requesting a stay of enforcement of the judgment. That motion was denied. Upon an ex parte petition this court granted a writ of supersedeas on December 30, 1959, directing the superior court to stay the conduct

of the sale of the building pursuant to the writ until the further order of this court. The building remains upon the land.

Appellants contend that the granting of the motions for the orders directing the issuance of a writ of enforcement and the order that the building be removed within 20 days after sale and that if not so removed all rights of the purchaser at such sale terminate, are and each is in error and contrary to law.

Appellants assert that the enforcement of the judgment is governed by sections 681 and 684 of the Code of Civil Procedure.[1] Appellants in effect state that the respondents have no remedy and are at the mercy of appellants for ten years from the date of the entry of the judgment insofar as the building located upon their real property is concerned.

It is apparent that the trial court followed the law as determined by the Supreme Court in *English* v. *Olympic Auditorium, Inc.*, 217 Cal. 631 [20 P.2d 946, 87 A.L.R. 1281] in ordering that the lien attach to the building only. The judgment was in fact in favor of the respondents in some respects in that the court did quiet respondents' title to the real property as requested by them. It was determined that none of the respondents was indebted to the appellants; that the appellants would have no lien against the real property of respondents and that respondents would recover their costs of suit from the appellants.

Appellants cite Freeman on Executions (3rd ed.), section 21,

---

[1]Section 681:

"The party in whose favor judgment is given may, at any time within 10 years after the entry thereof, have a writ or order issued for the execution or enforcement of the judgment. If, after the entry of the judgment, the issuing of such writ or order is stayed or enjoined by any judgment or order of court, or by operation of law, the time during which it is so stayed or enjoined must be excluded from the computation of the 10 years within which execution or order may issue."

Section 684:

"When the judgment is for money, or the possession of real or personal property, the same may be enforced by a writ of execution; and if the judgment direct that the defendant be arrested, the execution may issue against the person of the judgment debtor, after the return of an execution against his property unsatisfied in whole or part; when the judgment requires the sale of property, the same may be enforced by a writ reciting such judgment, or the material parts thereof, and directing the proper officer to execute the judgment, by making the sale and applying the proceeds in conformity therewith; when the judgment requires the performance of any other act than as above designated, a certified copy of the judgment may be served upon the party against whom the same is rendered, or upon the person or officer required thereby or by law to obey the same, and obedience thereto may be enforced by the court."

as authority for their position. The court in *Thomas* v. *San Diego College Co.*, 111 Cal. 358, 362 [43 P. 965] had substantially the same principle under consideration and stated as follows:

"There is no doubt about the general proposition laid down in Freeman on Executions, section 21, that 'as the judgment is the property of the plaintiff, he alone, whilst the property remains his, is entitled to exercise dominion over it,' and 'to allow another to control the writ is to turn the dominion of the property over to some one who is not entitled to it.' But it will be observed that the learned author is speaking of cases where the plaintiff 'is the only one entitled to the fruits of the judgment'; and in the same section he further says: 'A stranger may acquire an equitable right to the benefit of the execution, or to the property upon which it is levied, and such equitable right may, in most cases, give him authority to sue out and conduct the process'; so that it is the ownership of or interest in the judgment, or in the fruits of the execution, or in the property upon which it is levied, which authorizes a party to cause it to be issued."

It was further set forth at pages 363-364:

". . . The case here was also equitable. The decree required the sale of the property, and as no provision was made in the decree for delaying the sale, it was the duty of the plaintiffs to proceed without unreasonable delay to have the decree executed, and upon their failure to do so it became the duty of the court, upon the complaint of any party to the suit interested in its execution, to direct that its execution be proceeded with. It would be a vain thing to bestow upon a court of equity the power to make a decree which it had no power to enforce, and yet such would be the case if its execution depended upon the pleasure or convenience of the plaintiffs."

There is language in *Southern California Lbr. Co.* v. *Ocean Beach Hotel Co.*, 94 Cal. 217 [29 P. 627, 28 Am.St.Rep. 115] which distinguishes a sale of property under a foreclosure sale from a writ of execution. The first headnote reads as follows:

"The only process provided for the enforcement of a judgment foreclosing a lien upon specific property is that prescribed by section 684 of the Code of Civil Procedure, requiring a judgment for the sale of property to be enforced by a 'writ' reciting the judgment and directing the sale. Such 'writ' is not an 'execution' within the meaning of section 683, and a sale of the property by the sheriff is not invalidated because made after the return day of the writ."

In *Laubisch* v. *Roberdo*, 43 Cal.2d 702, it is said at pages 708-709 [277 P.2d 9] after quoting sections 681 and 684 of the Code of Civil Procedure as follows:

"The quoted sections of the Code of Civil Procedure are applicable to proceedings in an action to foreclose a mechanic's lien. (Code Civ. Proc., § 1201.1; *Withington* v. *Shay*, 47 Cal. App.2d 68, 73 [117 P.2d 415, 119 P.2d 1].) Such a lien is in the nature of a mortgage and an action for its foreclosure resembles a proceeding to foreclose a mortgage; the same procedural and substantive principles are generally appropriate in both cases. (*Curnow* v. *Happy Valley Blue Gravel & Hydraulic Co.*, 68 Cal. 262, 264 [9 P. 149]; *Ritter* v. *Stevenson*, 7 Cal. 388, 389; *Withington* v. *Shay, supra*, p. 73.)"

In the *Laubisch* case it was also held, at page 712, that ". . . a writ of enforcement, or an order of sale as it is often denominated . . . is the only process which may be used for the enforcement of a judgment directing the sale of mortgaged property." And at page 713: ". . . Without a writ of enforcement or order of sale, whichever it may be called, the sheriff or appointed commissioner has no authority to execute the judgment."

█ We are of the opinion that under the circumstances of this case the court had the power to make the orders which it did make.

It would be unconscionable to hold that the appellants can in effect compel the respondents to purchase the building upon which they have a lien to the end that their claim may be satisfied even though the respondents did not order or enter into a contract for the construction of the building in the first instance; knew nothing about it and apparently do not want it on their property. Appellants further suggest that the whole property, that is the real property and the building be sold and that appellants take from the sale price the amount of their judgment and give the balance to the respondents. The simple statement of the suggestion indicates what such a course could lead to in our economy under the circumstances of this case.

█ ". . . A court of equity has the inherent power to effectuate its decrees, and it will always find the means of enforcing them. . . ." (18 Cal.Jur.2d, § 59, p. 243.)

In *Smith* v. *Jarvis*, 26 Misc. 507 [57 N.Y. Supp. 483, 103 A.L.R. 1441] it is stated:

"Although the question of power in the court to grant the relief asked for was raised and discussed on the briefs, I deem

it unnecessary to enter at length upon the subject. I shall assume, as I believe it to be, that the court has the right, in a proper case, to direct the referee under such a judgment to proceed with the sale, on motion of any defendant, and against the wishes of the plaintiff. *Kelly* v. *Israel,* 11 Paige, 147. The exercise of the power, however, rests in the sound discretion of the court, and the moving party must show that in some substantial way his rights or interests would be jeopardized by delay.''

We shall consider next the assertion of appellants that it was error to order that the building be removed within 20 days after sale and that if not so removed, all rights of the purchaser should terminate.

Appellants insist that the judgment does not compel the removal of the building from the real property but that the purchaser of the building at the sale can remove it if he so desires but that apparently he would not be compelled to remove it. Appellants state in effect that the statutes of California did not provide for any such limitation or restrictions in sales in such cases and, there being no statute, the court can do nothing about it.

The judgment in this case provided with reference to removal of the building after sale that the purchaser ''shall have a reasonable time after said sale within which such purchaser or purchasers may remove said building from said premises, the extent of which time may be fixed hereafter by order of this court upon proper application therefor.''

In *English* v. *Olympic Auditorium,* 10 Cal.App.2d 196, 200 [52 P.2d 267], it was set forth that the court has inherent power upon a proper showing to grant a reasonable time within which a building may be removed from the premises upon the sale of a building to satisfy a mechanic's lien, ''. . . as a necessary incident to the fulfillment of its judgment.'' Appellants' argument is tantamount to saying that the court is impotent and incapable of making an order to effectuate its judgment unless there is some special statutory authority for such a procedure. Such is not the law.

Under appellants' view a buyer at the sale could determine not to remove the building after sale and thereby compel the respondents to institute an action against such buyer to compel the removal of the building. In other words, that part of the judgment which provided that respondents' title to the real property was quieted would be useless and frustrated and respondents would be compelled to start all over again to clear

the title to their real property, spend approximately two years in litigation and, during such time, pay the taxes and installments on the trust deed, and receive no income from the property because of the litigation involved. No such result is necessary and the trial court wisely provided to the end that such could not take place.

As we read the judgment it was necessarily contemplated that the purchaser must remove the building within a specified time (to be determined) after the sale in order to be entitled to take possession of the building. The trial judge obviously was so minded. It was undisputed at the hearing on the motions that the building could be removed from the premises in 8 or 10 days if removed by one method and within 10 or 12 days if removed by another method.

This court said in *Security Trust & Savings Bank* v. *Southern Pacific Ry. Co.*, 6 Cal.App.2d 585, 588 [45 P.2d 268] with reference to a forfeiture of appellants' rights under a specific performance decree as follows:

"The inequitable effect of denying appellants' motion to limit the time within which the plaintiff may tender the purchase price of the real property in question is to impose upon the land an interminable cloud on the title, with an obligation upon the appellants to pay all future taxes thereon at their peril, necessitating future litigation to remove that cloud to which proceeding the defense of *res judicata* may furnish a serious problem for determination. That situation is inequitable and in apparent conflict with the inherent power of a court of equity to enforce its judgment and with the evident purpose of the language of the decree. No direct authority has been cited as a precedent for this unusual and unjust result. The only issue presented on this appeal has resolved itself into a question of supplementary procedure to enforce a decree in equity. It is a well-established principle of law that a court possesses inherent power to enforce its judgments. (§ 128, Code Civ. Proc.; 34 Cor. Jur., p. 737, § 1139; *Commonwealth* v. *Lewis*, 253 Pa. 175 [98 A. 31]; *In re Cooley*, 95 N.J. Eq. 485 [125 A. 486]; *Montgomery* v. *Tutt*, 11 Cal. 190.) Section 128 of the Code of Civil Procedure provides in part:

" 'Every court shall have power:

" ' . . . . . . . . .

" '4. To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein. . . .'

"The text in 34 Corpus Juris, page 737, section 1139, *supra,* declares:

" 'Every court has inherent power to enforce its judgments and decrees, and to make such orders and issue such process as may be necessary to render them effective, and this power is not affected by the fact that the decree is final.'

"In *Commonwealth* v. *Lewis, supra,* the court says:

" 'The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would, in many cases, be useless. "All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless." '

"In the case of *Redington* v. *Chase,* 34 Cal. 666, 670, it is said in that regard:

" 'The answer to all complaints from the appellant, on the score of delay (in making a tender of the purchase price of land), is that he had it in his power at any time to hasten the action of the respondent by tendering a full performance on his own part, and *if the respondent refused to comply with the decree, the court, on motion, would have ordered him to perform within a specified time, on pain of having the decree set aside.*' " (See also *Koshaba* v. *Koshaba,* 56 Cal.App.2d 302, 312 [132 P.2d 854]; *Kent* v. *Superior Court,* 106 Cal. App.2d 593, 595 [235 P.2d 420]; *Priebatsch* v. *Third Baptist Church,* 66 Miss. 345 [6 So. 237]; *Midland Coal & Lumber Co.* v. *Ferguson,* 61 Mont. 402 [202 P. 389, 391]; *First National Trust & Savings Bank* v. *Cerveny,* 93 Cal.App.2d 255, 259 [208 P.2d 1018]; *Pailhe* v. *Pailhe,* 113 Cal.App.2d 53, 64 [247 P.2d 838]; *Connell* v. *Crawford,* 92 Cal.App. 715, 719 [268 P. 948]; *Potomac Oil Co.* v. *Dye,* 14 Cal.App. 674, 679 [113 P. 126].)

█ In *Klinker* v. *Klinker,* 132 Cal.App.2d 687, 694 [283 P.2d 83], the court appropriately said:

"The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction. Except where the decree is self-executing, jurisdiction of the cause continues for this purpose, or leave may be expressly reserved to reinstate the cause for the purpose of enforcing the decree, or to make such further orders as may be necessary. (*Dedrick* v. *California Whaling Co.,* 16 Cal.App.2d 284, 288 [60 P.2d 551]; 18 Cal.Jur.2d 243, § 59; 30 C.J.S. 1014, § 616.) A

court of equity can mold its decrees to suit the exigencies of the case. (*Connell* v. *Crawford*, 92 Cal.App. 715, 719 [268 P. 948].) ▮ Where equity has acquired jurisdiction for one purpose, it will retain that jurisdiction to the final adjustment of all differences between the parties arising from the causes of action alleged. (*Pailhe* v. *Pailhe*, 113 Cal.App.2d 53, 64-65 [247 P.2d 838] ; *First Nat. T. & S. Bank* v. *Cerveny*, 93 Cal.App.2d 255, 258-259 [208 P.2d 1018] ; *Murphy* v. *Sheftel*, 121 Cal.App. 533, 541 [9 P.2d 568] ; *Vallera* v. *Vallera*, 64 Cal.App.2d 266, 270-271 [148 P.2d 694] ; *McAuliff* v. *McFadden*, 42 Cal.App. 505, 512 [183 P. 870].)''

At the hearing on the motions for the orders complained of the appellants sought to introduce evidence as to the cost of the removal of the building and as to the value of the materials in the building if it were dismantled. Proper objections were sustained to such inquiries. The judgment was final and the proceedings before the court at the hearings on the motions had nothing to do with the value of the buildings dismantled or otherwise. Appellants also sought to show the cost of demolition of the buildings. Such was irrevelant and immaterial to the matters then before the court. Appellants made no effort to make any showing as to how long it would take to remove the buildings. The record is clear, in any event, that it is not necessary to demolish the building to remove it. There is expert evidence in the record to the effect that the building could be cut into three sections and thus moved onto a new slab at another location.

A reading and consideration of the entire record convinces us that there was no error in the proceedings and that the orders should be, and they are affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 25, 1961.