[Civ. No. 3591.—Second Appellate District, Division One.—April 11, 1922.]

## CHARLES C. SCOTT et al., Respondents, v. DELTA LAND AND WATER COMPANY (a Corporation), Appellant.

[1] Fraud — Rescission of Contract — Judgment — One Material Representation Sufficient.—In an action for the rescission of a contract for the sale of land because of alleged fraudulent representations by the vendor and its agents, a judgment in favor of the plaintiff may be sustained upon evidence supporting any one material representation, and it matters not that there may have been included in the allegations and findings representations which are not actionable.

[2] Id.—Productive Quality of Soil—Adequacy of Water Supply— Material Representations—Right of Rescission.—Representations as to the productive quality of the soil of land contracted to be sold and as to the adequacy of the water supply connected therewith are material factors which, if they furnish an inducement to the vendees to enter into the contract of purchase, will afford ground upon which to base a rescission when their falsity is established.

[3] Id.—Character of Soil — Adequacy of Water Supply — Right of Vendee to Rely on Misinformation.—Misinformation as to the productive character of the soil of land contracted to be sold and as to the adequacy of the water supply connected therewith constitute representations as to existing facts and conditions, and do not fall within the category of mere opinion or speculation, and the vendee has a right to rest upon them unless he possesses knowledge sufficient to induce a belief that such representations do not accord with the facts, or unless the conditions are such as to put him upon notice that the truth has not been stated.

[4] Id. — Opportunity to See Land — Ability to Determine Character—Imputed Negligence.—Where the only way that the quality of the soil could be determined was by chemical analysis, or by actual experimentation, negligence could not be imputed to the purchaser, a farmer, because, having been afforded an opportunity to see and examine the soil, he did not at once discover its true character.

[5] Id. — Modification of Contract — Nonwaiver of Fraud. — The fraud of the vendor was not waived by the vendee by the act of the latter in entering into a modification of his original contract

2. Right to rely on representations by vendor as to quality or condition of soil, note, L. R. A. 1917C, 273.

whereby he relinquished one-half of the land and water stock agreed to be·purchased where, at the time of making such modification, the vendee had not been made aware of the deficiencies in soil and water supply, and the consent of the vendor to such modification was not in any way based upon a condition that the latter should no longer be liable for any fraudulent representations made as an inducement for the vendee to enter into the original contract of purchase.

[6] ID.—DELAY IN COMMENCEMENT OF ACTION — LACHES — EQUITY. — The vendees, upon obtaining information respecting the inadequacy of the water supply, having then proceeded in an attempt to secure a cancellation of their contract, and those negotiations having proceeded for several months thereafter, and their notice of re-scission having been given within about seven months after learning of the inadequacy of the water supply and their action been commenced within about six weeks thereafter, they were not guilty of laches barring them from equitable relief.

[7] ID. — FALSITY OF REPRESENTATIONS — BELIEF OF VENDORS AS TO TRUTH—EVIDENCE—FINDINGS.—The court having found from the evidence that the representations made by the defendants and their agents were "false, untrue, misleading and fraudulent and were positively asserted by said defendants and their agents, and each of them, to be true, in a manner not warranted by the information which they or either of them possessed at the time of the making thereof," the plaintiffs, in order to recover judgment, were not required to further prove, and the court. to find, that the representations when made by the defendants were not actually believed by the defendants on reasonable grounds to be true.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. Story, Jr., Lissner & Lewinsohn and Lewinsohn & Barnhill for Appellant.

L. M. Fall, Dudley W. Robinson and Hickcox & Crenshaw for Respondents.

JAMES, J.—Plaintiffs, alleging misrepresentations fraudulently made to induce them to enter into a contract for the purchase of certain land and water rights in the state of Utah, brought this action to enforce rescission. The prayer of their complaint was that the contract of sale be canceled; that a certain mortgage creating a lien against real property

in the state of California, which was executed by them to secure payment of a portion of the purchase price of the Utah land and water stock, be ordered surrendered, and promissory notes made incidental therewith be canceled, and for damages and costs. The decree as entered secured to the plaintiffs all of the relief demanded, except that no judgment was allowed for damages. The defendants have appealed from the judgment and assign as a principal ground therefor that the evidence was insufficient to sustain the findings of the trial court. Certain alleged errors of law occurring in the course of the trial make up the remaining points upon which it is claimed that a reversal should be ordered.

The defendant Delta Land and Water Company was the owner of the real property contracted to be purchased by the plaintiffs; the Western Securities Company was an allied corporation organized for the purpose of acting as sales agent of the property. The legal connection between the two corporations was so close as to leave no question but that the corporation first named assumed full responsibility for every act done and representation made by any of the officers or agents of the latter while promoting sales of the Delta properties; hence, in references made hereinafter to such officers or agents, they will for convenience be generally referred to as those of the defendants, and the principal corporation will be designated as the Delta Company. Plaintiffs in their complaint alleged that on March 5, 1915, they entered into a contract to purchase from the Delta Company 160 acres of land in Beaver County, Utah, and 160 shares of capital stock of the Beaver County Irrigation Company (all of the stock of the latter corporation being owned by the Delta Company); that they executed notes to cover the purchase price of the land, which was agreed to be $3,800, and the price of the water stock, which was agreed to be $11,200, and in addition thereto gave a mortgage on five acres of land which they owned near the town of Whittier, in California, to secure payment of the $3,800. The payment of the price of the water stock was secured by assignment of the shares to the Delta Company, and by mortgages made covering the land purchased. They alleged that on May 20, 1915, a new agreement was made whereby plaintiffs relinquished one-half of the land and water stock agreed

to be purchased and contracted then to pay for eighty acres
retained by them at the price of thirty dollars per acre, and
eighty shares of water stock at seventy dollars per share.
The terms of the notes given on account of the modified
contract were changed from those which accompanied the
original contract, but the mortgage liens remained, and eighty
of the shares of water stock continued to be held by the
Delta Company as collateral security.   Plaintiffs alleged that
their contract to purchase the land and water stock was
procured through false and fraudulent representations made
to them by defendants; that the defendants represented: (1)
that the land "was of the best quality, fertile in every re-
spect, free from alkali and noxious weeds, and suitable for
growing thereon all kinds of crops of hay, grain and vege-
tables"; (2) that the Delta Company owned all of the water
flowing in Beaver River and that, according to the record
kept by the United States government for fourteen years,
that river furnished sufficient average flow to irrigate 44,000
acres of land; that all of the said water had been made ap-
purtenant to the 15,000 acre tract of land owned by the Delta
Company, and that it was sufficient and would furnish all
necessary water for irrigating said tract, and amount to an
average each year of not less than three "acre-feet"; that
said land was worth thirty dollars per acre and the water
stock was worth seventy dollars per share.   There were other
allegations as to fraudulent representations, such as that de-
fendants stated that the Delta Company had spent $1,000,000
in providing an irrigation system; that many thousand cattle
and sheep (the particular number being stated in the com-
plaint) were being cared for and fed in the valley where
the land was situated; that the dam provided to hold the
water in storage had a cement core extending to bedrock.
It was alleged that the land was not fertile; that it was im-
pregnated with black alkali; that it was not of the best
quality, or in any respect suitable to grow hay, grain, and
vegetables, and that the water supply was not as represented,
or sufficient with which to irrigate the 15,000 acre tract, but
sufficient only to irrigate not to exceed 6,000 acres; that
the United States government had not kept a record of the
flow of water for fourteen years, but had only kept a record
for six years, and that, according to such record, it was
not shown that there was sufficient water in Beaver River

to furnish an average of three "acre-feet" annually to the 15,000 acre tract; that in the year 1915, on or about July 1st, the water was exhausted, and that no further water was available during that season for the irrigation of crops, and that the other representations referred to were not founded in fact. The trial judge found that misrepresentations had been made in the particulars alleged and found that the land was not worth more than ten dollars per acre and the water stock not more than fifteen dollars per share.

[1] The judgment may be sustained upon evidence supporting any one material misrepresentation. (*Davis* v. *Butler*, 154 Cal. 623 [98 Pac. 1047]; *Thomas* v. *Hacker*, 179 Cal. 731 [178 Pac. 855].) It matters not that there may have been included in the allegations and findings representations which are not actionable; for instance, the representations as to the cost of the water system, and as to the number of cattle and sheep which were represented as being cared for in the valley where the land was situated, and whether the dam had a cement core, may be left out of consideration. [2] The representations as to the productive quality of the soil and as to the adequacy of the water supply were material factors which, if they furnished an inducement to the vendees to enter into the contract made by them, would afford ground upon which to base a rescission when their falsity was established. (*Bickel* v. *Munger*, 20 Cal. App. 633 [129 Pac. 958]; *Tracy* v. *Smith*, 175 Cal. 161, 164 [165 Pac. 535].) On the other hand, if the land was as represented and the water supply adequate, no damage could result because of any of the other alleged misrepresentations. [3] Misinformation as to the material matters referred to would constitute representations as to existing facts and conditions, and would not fall within the category of mere opinion or speculation. (*Barron Estate Co.* v. *Woodruff Co.*, 163 Cal. 573 [42 L. R. A. (N. S.) 125, 126 Pac. 351].) And the vendee had the right to rest upon them unless he possessed knowledge sufficient to induce a belief that the representations did not accord with the facts, or unless the conditions were such as to put him upon notice that the truth had not been stated. (*Willey* v. *Clements*, 146 Cal. 91 [79 Pac. 850]; *Neher* v. *Hansen*, 12 Cal. App. 370 [107 Pac. 565].)

The evidence showed that the Delta Company issued a circular which was printed and used generally by the sales agents, which contained these statements: "15,000 acres of virgin soil under a one million dollar irrigation system; an inexhaustible supply of water that makes the Milford farmer absolutely independent of rainfall." Plaintiff C. C. Scott (the husband) testified that he was a farmer residing near Whittier, California; that he had been solicited by an agent of the defendants to purchase land in the Utah tract, and that he was given one of the circulars to which reference has been made; that he went to Utah in February of 1915 with an agent of defendant and was shown an experimental farm upon which was a good stand of alfalfa (this experimental farm had been highly fertilized but the agents did not give that information to Scott); that he was shown the dam in which was collected the water supply, and that the agent told him that every share of water entitled the holder to three acre-feet; that the agent explained what the term "three acre-feet" meant; that at Minersville adjoining the 15,000 acre tract the agent showed trees and berries and said that there could be grown just such products on the tract referred to; also that the agent showed alfalfa which he said had been planted thirty-five years and said that the same kind of crop could be produced on the land which said plaintiff was solicited to buy; that the agent took a shovel and showed different soils; said that it was all good soil; that he had never seen better, and made the representations regarding the government having measured the water for fourteen years and of the conclusions drawn therefrom as to the water supply, as the same were alleged by plaintiffs in their complaint. The land had never been cultivated or changed from its raw state. It appears by Scott's testimony that he did not enter into a contract immediately after making this first trip to the Utah land, and other agents of the defendants soon called upon him, one of whom (the president of the Delta Company) stated that "they had sufficient water for 44,000 acres, but to make this thing safe for the people we are going to put it on only 15,000." Following this, plaintiffs made the contract of March 5, 1915. Shortly thereafter Scott took his son and went upon the land contracted to be purchased, and spent some time in leveling and clearing the ground. He raised no crops but expressed him-

self in his testimony as having become dissatisfied with conditions, although he did not, during his stay there, obtain information as to whether the water supply would be adequate, or what the productivity of the soil was. Upon his return to his home in Los Angeles County he requested and secured the new agreement which has been mentioned, under which he contracted to purchase but one-half of the land covered by the agreement of March 5th. Some time in July of 1915 he received notice that the water supply for irrigation purposes had for the time being become exhausted and, after negotiations with the Delta Company looking to an abrogation of his contract, all of which failed of result, he served on behalf of himself and wife a notice of rescission, which notice was given on March 20, 1916. As to the representations concerning the character of the soil, it must be conceded that such representations, testified by Scott as having been made, warranted the latter in believing and assuming that the soil was of a character as would produce crops of general kinds suitable to that locality and in average quantities. It was shown, even by the testimony of witnesses for the defendant, that the land was lacking in humus constituent and would not produce general crops until that element had been supplied either by fertilizing with material brought upon it, or by growing alfalfa thereon for several years; furthermore, that for the first year or two even an average crop of alfalfa could not be produced. The representation was that the then condition of the land was such as would produce crops of the kind referred to and in average quantities, and such representation would not be satisfied by showing that after a process of fertilization extending over several years the land might be made productive. [4] It was shown that the only way that the quality of the soil could be determined would be by chemical analysis, or by actual experimentation; hence there could be no imputation of negligence because Scott, a farmer, having been afforded an opportunity to see and examine the soil, did not at once discover its true character. The evidence was sufficient to sustain the finding on that issue. It was sufficient also to support the conclusion of the trial judge that one and seven-tenths acre-feet, which he found to be the maximum available supply of water, was insufficient to properly irrigate the 15,000 acre tract. There was some conflict in the evidence

as to that issue, but there was testimony of witnesses who stated that the requirement (or the water duty, as it was termed) was three acre-feet annually in order to meet needs in the production of average crops. This testimony furnished evidence of a substantial kind and, as this court has no duty to resolve the conflict, the conclusion of the trial judge upon that matter of fact must be taken as final. Upon the two main issues specified there was sufficient evidence.

[5] The fraud was not waived by the changing of the contract on May 20, 1915. At the latter date plaintiffs had not been made aware of the deficiencies in soil and water supply. The consent of the Delta Company to the release of the obligations of the plaintiffs as to one-half the quantity of land and water shares purchased was not in any way, so far as is shown, based upon a condition that the Delta Company should no longer be liable for any fraudulent representations made as an inducement to the plaintiffs to enter into the original contract. The contract of May 20th amounted to a modification of the original agreement; it carried with it the original mortgage security as then existing against the California property of the plaintiffs.

[6] Plaintiffs were not guilty of laches barring them from the equitable relief sought. In August of 1915 they obtained information respecting the inadequacy of the water supply. They then proceeded in an attempt to secure a cancellation of their contract, and negotiations proceeded, it may be gathered from the record, for several months thereafter. About March 20, 1916, they gave notice of rescission and on May 3d of the same year commenced this action. They acted with reasonable diligence in pursuing the remedy which the law afforded them. No conditions are shown as where the opposite party has so changed its situation, relying upon the contract, as to make it inequitable that it should now be compelled to release plaintiffs from the obligations assumed by them. The offer of the plaintiffs to release to the Delta Company all claim to the land or water stock was sufficiently expressed in the notice of rescission.

[7] The court in its findings recited that the representations made by defendants and their agents were "false, untrue, misleading and fraudulent and were positively asserted

by said defendants and their said agents, and each of them, to be true, in a manner not warranted by the information which they or either of them possessed at the time of the making thereof.'' Appellants argue that the burden rested with the respondents to show at the trial that the representations when made by defendants were not ''actually believed by the defendants on reasonable grounds to be true.'' This point carries with it the suggestion that the finding of the court which has just been referred to was not sufficient to support the judgment. Aside from the provisions of section 1572 of the Civil Code, it is not established by the weight of authority in the United States that a party to a contract may innocently and with belief in the truth of his statements misrepresent to the opposite party conditions material to the consideration to be rendered by the former and escape liability. In a civil action the good faith of the party who procures the assent of another to the making of a contract by material misrepresentations is of no moment. ''Many courts lay down the rule that the misrepresentation of a material fact may be ground for rescinding or avoiding a contract though there is no actual fraud, and though it is innocently made. Such a representation is considered to be constructively fraudulent because of its effect of imposing upon and deceiving the person to whom it is made.'' (12 R. C. L., p. 343, par. 98.) The rule of the criminal law requiring proof of a specific intent to defraud in false pretense cases does not apply to civil actions.

Errors alleged to have been committed by the trial judge in his rulings on the admission of evidence have been examined and as to none of them is it made to appear that the appellants have been so prejudiced as to entitle them to a new trial. There was competent evidence to the main issues which have been hereinbefore discussed. Such evidence supports the findings and judgment.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 8, 1922.

All the Justices concurred.