[Sac. No. 3531. In Bank.—April 11, 1925.]

## SAMUEL P. HARRIS et al., Appellants, v. LOTTIE TATE MILLER, Respondent.

[1] FRAUD—MISREPRESENTATIONS—OPINION—REPRESENTATION AS FACT.—It is the general and well-settled rule that when a representation concerning the subject matter of a transaction which might, ordinarily, be only the expression of an opinion is asserted as an existing fact, material to the transaction, and which has a reasonable tendency to induce one of the parties to the transaction to consider and rely upon such representation as a fact, the statement then becomes an assertion of an existing fact within the meaning of the general rule as to fraudulent representations.

[2] ID.—CONTRACT—REPRESENTATION—EXPRESSION OF OPINION—LIABILITY FOR.—A party inducing another to contract in reliance upon estimates or opinions professedly based upon alleged facts known to the party stating them to be nonexistent will not be permitted to escape responsibility by the plea that he was merely declaring his opinion.

[3] ID. — VENDOR AND VENDEE — SALE OF ORANGE GROVE — MISREPRESENTATIONS—VALUE OF CROP—CLIMATIC CONDITIONS—OPINION.—In the sale of an orange grove misrepresentations as to the value of the crop and as to climatic conditions in the district where the land is situated, made by the seller's agent, who was an experienced

---

1. General rule as to expression of opinion as fraud, note, 35 L. R. A. 417. See, also, 12 R. C. L. 247, 248; 12 Cal. Jur. 727.

2. See 12 R. C. L. 249; 12 Cal. Jur. 728.

3. Statement as to future profits of business as ground for action for fraud, note, Ann. Cas. 1916D, 1040. See, also, 27 R. C. L. 377, 378; 12 Cal. Jur. 730.

orange-grower and acquainted with the climatic conditions, to the purchaser, who knew nothing of these things and relied upon the agent's representations, standing by themselves might be considered as mere expressions of opinion, but when taken with other material misrepresentations entering into the procurement of the sale are positive representations.

[4] ID.—MISREPRESENTATION OF SINGLE FACT.—The misrepresentation of even a single material fact by the seller of real property upon which the purchaser had a right to rely will suffice to support an action by the purchaser to recover payment made for fraudulent misrepresentations in the sale.

[5] ID.—INTENT TO DECEIVE—WHEN IMMATERIAL.—A party making misrepresentations which operate as an inducement for the making of a contract, which he knows to be untrue or having no ground for believing them to be true, will not be held immune from the consequences resulting therefrom by an absence of an intent to deceive.

[6] ID. — SALE OF LAND — ACTION TO RECOVER PAYMENTS — FRAUD — VALUE OF LAND.—In an action to recover payments made on a purchase of real property, upon the ground of fraudulent misrepresentations, it is not essential to show that the property contracted for was worth less than the price agreed to be paid for it, but it will suffice if it appears that if the property purchased had been as represented it would have been of greater value than it actually was.

[7] ID.—RESCISSION—RESTORATION—OFFER.—In such a case the right to rescind the contract was not lost because, with the demand for the return of the payments, no offer was made to return money derived from the sale of the crop, where this money was applied to the expenses of caring for the orchard by the agent who handled the sale of the crop, the seller having retaken possession of the land before suit and the purchaser having received nothing of value from the transaction.

[8] ID.—CONTRACT FOR SALE OF REAL PROPERTY—ASSIGNABILITY OF—ASSIGNMENT OF RIGHT TO RESCIND.—A contract for the sale of real property and the rights incidental thereto are assignable, and an assignment carries with it the right to rescind on the ground of fraud.

[9] ID.—EVIDENCE—COMPROMISE—AGENCY.—In an action to recover payments made under a contract for the sale of real estate, upon the ground of fraudulent misrepresentations, an offer of compromise of plaintiff's claim, although it would have been admissible

---

5.  See 12 Cal. Jur. 747.

in evidence if it had been shown to have been duly accepted, was properly excluded where there was no proof of authority in the agent who it is claimed accepted it.

(1) 26 C. J., p. 1083, n. 6. (2) 26 C. J., p. 1083, n. 9. (3) 26 C. J., p. 1083, n. 7. (4) 26 C. J., p. 1066, n. 67. (5) 26 C. J., p. 1121, n. 16. (6) 26 C. J., p. 1176, n. 50. (7) 39 Cyc., p. 2051, n. 79. (8) 39 Cyc., p. 1665, n. 33. (9) 22 C. J., p. 317, n. 62, p. 376, n. 21.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Reversed.

The facts are stated in the opinion of the court.

Theodore L. Breslauer and Farnsworth, McClure & Burke for Appellants.

Power & McFadzean and W. W. Middlecoff for Respondent.

LENNON, J.—In this action the plaintiffs' complaint pleaded a cause of action against the defendant, in the form of a common count, for moneys had and received in the sum of $8,500. Defendant, answering, denied all of the material allegations of the complaint. The evidence, adduced in response to the issues made by the pleadings, discloses that the gravamen of the plaintiffs' cause of action is for fraud and deceit and consists of claimed false and fraudulent representations alleged to have been made to the plaintiffs, by an agent of the defendant, whereby Samuel P. Harris, one of the plaintiffs, was induced to enter into a written agreement with the defendant for the purchase at the agreed price of $26,000, of a twenty-acre tract of land planted to oranges and situated in the county of Tulare.

By the terms of the agreement the plaintiff, Samuel P. Harris, was to pay the sum of $1,000 cash upon the execution of the contract; the remainder was to be paid in certain specified installments at certain designated intervals of time following the initial payment. The contract in controversy contained, among other covenants, the provisions that "in the event the present orange crop upon said property is ready for marketing before the first $12,000 is paid upon the said purchase price, the said crop shall be marketed through

the Strathmore Orange Grove Company and the proceeds or returns derived therefrom to be paid to the said party of the first part (the defendant) and be by her credited upon the said $12,000 payment.''

The plaintiffs paid the installments contracted for until the sum of $8,500 had been paid to the defendant. It was the plaintiffs' claim, and the proof offered and received in support of their case tends to show, that they were persuaded to purchase the property in question by false representations made by the defendant's agent as to the number of orange trees growing upon the land; the value of the crop upon the trees; and the character of the climatic conditions relative to the production of oranges in the locality in which the land is situated. More precisely stated, the material misrepresentations claimed and relied upon by the plaintiffs as an inducement to enter into the contract were these: The defendant's agent said to them that there was a $4,000 crop of oranges growing upon the trees at the time that the contract was entered into; that the locality in which the orchard was situated was free from frosts; that ten acres (one-half of the tract) was planted in twelve year old navel orange trees and that the other half of the tract, with the exception of one acre, which was devoted to a family orchard, was planted in six year old orange trees; that all of the trees were in good condition save those in the family orchard; and that there never was a frost in the locality of the tract.

Some time in September, 1920, so the evidence shows, the plaintiffs went to Porterville and came in contact with Mr. Farmer, the agent of the defendant. He showed the plaintiffs generally around the district and finally took them to the Miller property. They inspected the house partially, but made no detailed inspection of the orange grove. The agent gave to the plaintiffs a typewritten prospectus which reads in part as follows: ''Miller Twenty Acres.'' ''This property consists of 10 acres Washington Naval orange trees, 12 years old; nine acres Washington Naval orange trees, 6 years old; one acre family orchard. . . . There is a $4000 crop now hanging on the trees marketable in November.''

It is an admitted fact in the case that the defendant's agent was aware, during all of the time the agreement in controversy was being negotiated, of the undisputed fact that the plaintiffs had no experience in or knowledge of orange

growing; were utterly ignorant of the value of orange lands and orange crops and had no knowledge whatever of climatic conditions in the locality in which the tract of land is situate and had not inspected the grove in question prior to its purchase by them from the defendant.

The evidence shows that the defendant's agent who negotiated the agreement had resided in the vicinity of the land in question for twelve years; that he was an experienced fruitman; that he had particular experience in growing and cultivating oranges; that he owned and operated the "Strathmore Orange Grove Company," the company named in the contract to which the money received from the sale of the crop was to be paid on account of the purchase price of the land; that he frequently bought and sold orange groves on his own account in the vicinity of the tract of land in controversy. It is not disputed that when the agent of the defendant told the plaintiffs that there was a $4,000 crop of oranges on the trees at the time the contract was negotiated he meant $4,000 net; nor is it disputed that the defendant's agent told them that there were in fact ten acres of land planted to twelve year old trees and that the district in which the grove in question is located was practically frostless.

The findings of the trial court are to the effect that the defendant's agent did not represent or guarantee that there was a $4,000 crop of oranges then growing on the trees in the orchard, but did express *an opinion* that there was a $4,000 crop of oranges then growing on the orchard; that the orchard was in good condition; that there were nine acres of six year old trees in which there was a tract consisting of about three acres of pomegranate trees; that the defendant's agent, prior to the time of entering into the contract, stated to the plaintiffs that said three acres would have to be replanted and should be replanted to deciduous trees; that in said locality the frost had never injured navel orange fruit and that said orchard ·was all of the navel orange variety; that the frost had never been known to injure trees over six years old; that no representations made by the agent of defendant to plaintiffs, or either of them, were made with intent to deceive or defraud the plaintiffs or either of them; and neither of the plaintiffs was defrauded or damaged in any sum by reason of any of the representa-

tions or acts of the defendant or her agent. It will be noted that the trial court did not find that the defendant did not say to the plaintiffs that the district in which the grove in question is located "was practically free from frost." Nor did the trial court find one way or the other concerning the alleged representations of the agent relative to the number of acres planted to twelve year old trees.

From the judgment in favor of the defendant based upon the foregoing findings plaintiffs appealed.

The finding of the trial court to the effect that the statement of Farmer, the agent of the defendant, that there was a $4,000 crop of oranges on the trees was but the statement of an opinion rather than the asseveration of an existing fact is not, we think, supported by the evidence. [1] It is the general and well-settled rule that when a representation concerning the subject matter of a transaction which might, ordinarily, be only the expression of an opinion is asserted as an existing fact, material to the transaction, and which has a reasonable tendency to induce one of the parties to the transaction to consider and rely upon such representation as a fact, the statement then becomes an assertion of an existing fact within the meaning of the general rule as to fraudulent representations. (2 Pomeroy, 3d ed., sec. 878; *Herden* v. *Hanson,* 182 Cal. 538 [189 Pac. 440]; *Sheer* v. *Hoyt,* 13 Cal. App. 622 [110 Pac. 477]; *Winkler* v. *Jerrue,* 20 Cal. App. 555 [129 Pac. 804]; *Myers* v. *Lowery,* 46 Cal. App. 682 [189 Pac. 793]; *Edge* v. *Bryan,* 47 Cal. App. 312 [190 Pac. 476]; *Stockton* v. *Hind,* 51 Cal. App. 131 [196 Pac. 122]; *Tracy* v. *Smith,* 175 Cal. 161 [165 Pac. 535]; *Crandall* v. *Parks,* 152 Cal. 772 [93 Pac. 1018]; *Muller* v. *Palmer,* 144 Cal. 305 [77 Pac. 954].)

Every element necessary to the invocation and application of the rule stated is to be found in the undisputed facts of the instant case. The plaintiffs had no knowledge of orange growing. The defendant's agent was an experienced man in the cultivation of oranges and the sale of orange crops and orange groves. The defendant's agent knew that the plaintiffs were relying upon him absolutely. That the value of the crop was a material representation cannot be doubted, for by the very terms of the contract the crop was to go to the defendant in payment of the $3,500 installment provided for in the contract. That it was instrumental in pro-

curing plaintiff's signature to the contract is evidenced by the fact that the defendant's agent insisted that if the plaintiffs did not enter into the contract at once the crop would be withdrawn from the terms of the agreement.

Although the agent of the defendant testified that his assertion to the plaintiffs that there was a $4,000 crop on the trees was only his "estimate" of the value of the crop, he did not testify that he did not say to the plaintiffs that there was a $4,000 net crop of oranges on the trees. In short, he did not inform the plaintiffs that his statement concerning the value of the crop was only an opinion rather than the statement of a known fact.

The agent of the defendant admitted that he had visited the grove in question some three months prior to the sale for the purpose of estimating the value of the crop and that in doing so he walked two or three times diagonally between the trees. The agent also admitted that he observed the crop on the trees within a month of the sale and that he then estimated the number of boxes of oranges on the trees to be 1,500 loose or 1,000 packed, which he figured at the time he made the estimate would bring $4 a box packed. The first pool of the oranges sold at $4.15 a box, which price, if maintained, would have brought $4,150 *gross*. The total crop, however, ultimately brought approximately only the sum of $2,200, or an average of $2 a box. On cross-examination the defendant's agent admitted that in order to approximate his estimate of the value of the crop as $4,000 *net* the oranges should have sold for $6 a box. It is at once apparent that the agent's own estimate of 1,000 boxes, selling at $4 a box, would not approximate his representation that the value of the crop was $4,000 net and, therefore, the agent must have known at the time he made the representations concerning the value of the crop that there was not and could not be a $4,000 net crop on the trees. [2] "A party inducing another to contract in reliance upon estimates or opinions professedly based upon alleged facts known to the party stating them to be nonexistent will not be permitted to escape responsibility by the plea that he was merely declaring his opinion." (*Henry* v. *Continental, etc.*, 156 Cal. 667, 680 [105 Pac. 960, 965].)

It is not disputed that the defendant's own agent represented to the plaintiffs that the tract of land within which

the Miller property is located was situated in a vicinity which was "practically frostless." He stated that this was one of the reasons the value of the land in the vicinity was so high. The uncontradicted evidence shows, however, that as a matter of fact there had been two frosts in the vicinity during the time the agent resided there and that one of these frosts was an exceptionally heavy frost which destroyed the three acres of young orange trees (one-third of the new orchard planted in 1912) subsequently planted to pomegranate trees. Although the agent testified that he was not aware of the destruction of these three acres of orange trees by the frost of 1913, it is scarcely possible that he could have resided in the district at the time and remained ignorant of the fact that there had been a frost. The frost of 1916 did not injure the trees then on the property for the reason that at that time they were old enough not to be injured. The defendant's agent testified that he said that there was no danger of frost for the reason that the orange trees on the property were navel oranges and these were usually harvested in December before the frosts came. According to the testimony of defendant's own witness the crop of navel oranges in the low ground were frozen in 1916. While it may be true that the frost ordinarily falling in the vicinity of the grove in question may not have been sufficiently severe to injure full-grown trees, nevertheless it is an uncontradicted fact in the case that such frosts were sufficiently severe to injure any new orange trees which might be set out on the three-acre tract of land which the agent said was bare land and should be replanted. Consequently it cannot be said, as is contended, that the evidence shows the truth of the agent's statement that the district "was practically frostless."

[3] Considered alone and standing by themselves, the representation as to the value of the crop and the statement as to the climatic condition obtaining in the district where the land in controversy was located might be held to be mere expressions of opinion and therefore could not be made the basis of an action for deceit and misrepresentation. But when taken together and then coupled with all of the admitted and undisputed facts and circumstances of this case the conclusion is inescapable, it seems to us, that they were, as a matter of law, positive representations rather than a

mere expression of an opinion of existing facts made by one assuming to have knowledge of the subject and which were undoubtedly and admittedly material inducements to the making of the contract in controversy. (*Muller* v. *Palmer, supra; Tracy* v. *Smith, supra; Myers* v. *Lowery, supra.*)

Clearly, the number of orange trees planted to the grove in question was a material factor in the making of the contract in controversy. And the record shows without contradiction that the plaintiffs were told prior to the consummation of the contract that there were ten acres of twelve year old orange trees, whereas, in truth and in fact there were but nine acres of such trees. The trial court failed to find upon this phase of the case. This discrepancy in the representation as to the number of acres planted to twelve year old orange trees makes a difference of $1,000 in the actual value of the land and a substantial depreciation in the producing power of the grove as a whole. The plaintiffs undoubtedly were entitled to have delivered to them the grove which they contracted for in substantial accord with the inducing representations of the agent of the defendant. The difference between nine and ten acres of twelve year old trees is a substantial difference.

While it is true there is a conflict in the evidence as to whether or not the agent of the defendant prior to the consummation of the contract informed the plaintiffs with reference to the other half of the tract that there were six acres of six year old trees and three acres of bare land instead of nine acres of six year old trees as represented in the prospectus, still the fact remains undisputed that there were not three acres of vacant orange land for the reason that three of the nine acres referred to were planted to pomegranates. The plaintiffs were not required to take nine acres of twelve year old orange trees in lieu of the ten acres contracted for. Nor were they required to take three acres of land planted to pomegranate trees for three acres of unplanted land.

It will thus be seen that several misrepresentations of material matters of fact entered into the procurement and consummation of the contract in controversy. [4] And it is well settled that the misrepresentation of even a single material fact upon which the plaintiffs had a right to and did rely will suffice to support plaintiffs' cause of action. (*Davis*

v. *Butler,* 154 Cal. 623 [98 Pac. 1047]; *Thomas* v. *Hacker,*
179 Cal. 731 [178 Pac. 855]; *Scott* v. *Delta L. & N. Co.,* 57
Cal. App. 320 [207 Pac. 389].)

[5]   The fact that the agent of the defendant, as the
court found, had no intent in making the representations in
question to deceive the plaintiffs will not militate against the
plaintiffs' cause of action.   The party making misrepresenta-
tions which operate as an inducement for the making of a
contract, which he knows to be untrue or having no ground
for believing them to be true, will not be held immune from
the consequences resulting therefrom by an absence of an
intent to deceive.   The essential element in causes of action
of the character of the instant case is the "intent to induce
another party to enter into the contract."   (Civ. Code, sec.
1572.)   [6]   Nor is it essential that it be shown that the prop-
erty contracted for was worth less than the price agreed to
be paid for it.   It will suffice if it appears that if the prop-
erty purchased had been as represented it would have been of
greater value than it actually was.   (*Spreckels* v. *Gorrill,*
152 Cal. 383 [92 Pac. 1011].)

[7]   Treating the cause of action as did the parties and
the trial court as one of rescission, there is no merit in the
contention that the right to rescind was lost because, with
the demand for the return of the $8,500 in suit, no offer
was made to return to the defendant the sum of $2,200
which was derived from the sale of the crop of oranges.
This money was applied by the Strathmore Orange Grove
Company, who handled the sale of the crop, to the expenses
of caring for the orchard, such as spraying, fertilizing, etc.
The defendant, before the filing of the suit, had retaken
possession of the property.   The plaintiffs had not been
given title to the property nor had they received any benefit
or anything of value from the transaction.   It cannot be
said that the plaintiffs' failure to return or offer to return
something which they did not have and which the defendant
did have operated to defeat the cause of action.

[8]   The contract in controversy was signed only by Sam-
uel P. Harris and the defendant, Lottie Tate Miller.   And
while Samuel P. Harris is joined as plaintiff with M. Kate
Harris, it appears that prior to the institution of the action
said Samuel P. Harris assigned by written instrument all of
his right, title, and interest in said contract and to the land

196 Cal.—2

to which it related to the plaintiff, M. Kate Harris. The contract and the rights incidental thereto were assignable (*Moore* v. *Massini,* 32 Cal. 590; *Rued* v. *Cooper,* 109 Cal. 682 [34 Pac. 98]; *Kemp* v. *Enemark,* 194 Cal. 748 [230 Pac. 441]; *Henderson* v. *Henshall,* 54 Fed. 320 [4 C. C. A. 357]), and under all of the particular circumstances of the instant case, the assignment, we think, carried with it the right to rescind on the ground of fraud.

[9] The plaintiffs complain of a ruling of the trial court which precluded proof in their behalf of the fact that the defendant had accepted a compromise of plaintiffs' claim effected by Farmer as agent of the defendant. The proffered proof was objected to upon the ground that no foundation for such evidence was laid in this, that it was not shown that Farmer, at that particular time, was authorized to act as the agent of the defendant in effecting such compromise and rescission. The objection was sustained by the trial court upon the ground stated and upon the further ground, volunteered by the trial court, that to admit the evidence "would be . . . destructive of the objection against admitting offers of compromise."

The plaintiffs offered in evidence several letters and telegrams which tended to show that the defendant, through Farmer, had entered into negotiations for the purpose of effecting a compromise of the plaintiff's claim and that these negotiations had proceeded to a point where the compromise had been accepted by Farmer, the agent of the defendant. Upon this phase of the case the evidence showing, as we think it did, the acceptance of an offer to compromise plaintiffs' claim of fraud and misrepresentation, was admissible as evidence from which an admission of the defendant against interest might be inferred. (2 Jones on Evidence, sec. 291.) Of course, it is the general rule that a mere offer of compromise, for familiar reasons, is not admissible in evidence. But when it is shown that the offer of compromise has been accepted it becomes a completed agreement and the offer and its acceptance were admissible in evidence. (2 Jones on Evidence, sec. 291; 22 Corpus Juris, sec. 352; *Dugger* v. *Kelly,* 16 Iowa, 129, 140 [150 N. W. 27].) Nevertheless the ruling of the trial court must be sustained upon the ground that it was not shown nor attempted to be shown

that Farmer was authorized to and did accept as the agent of the defendant the offer of compromise.

The judgment appealed from is reversed and the cause remanded for a new trial.

Richards, J., Shenk, J., Waste, J., Seawell, J., and Lawlor, J., concurred.