[Civ. No. 6258.  First Appellate District, Division One.—June 25, 1928.]

MARY A. CONNELL, Respondent, v. JENNIE C. LEWIS CRAWFORD, Appellant.

Sooy & Heywood for Appellant.

Lovett K. Fraser and George H. Hickman for Respondent.

CAMPBELL, J., *pro tem.*—This is an action in which plaintiff seeks to rescind an exchange of two flats which belonged to her in the city of Oakland for timber land in Idaho, the property of defendant. The defendant having transferred the Oakland property received from plaintiff to an innocent purchaser for value, judgment was rendered in favor of plaintiff rescinding the exchange, adjudging that plaintiff return the timber land to defendant, and that plaintiff have judgment against defendant for $7,500, the amount received by defendant from the sale of the two flats.

The following evidence is contained in the record: Plaintiff, a woman sixty-four years of age, owned two flats in the city of Oakland of the value of $7,500, which had been renting for $80 per month and also had $3,000 cash on

deposit in an Oakland bank. J. G. Crawford, a real estate agent, had offices and was in the real estate business under the name of Shattuck Realty Company within two blocks of plaintiff's property and at the time of the transaction in question was the husband of defendant Jennie C. Lewis Crawford. The plaintiff listed her property with Crawford to rent or sell. While the property was so listed and while Crawford was acting as her agent, he borrowed from plaintiff $3,000 on his unsecured note, which has never been paid. After borrowing this money—all that plaintiff had—he started out to get possession of her flats. He told plaintiff that her two flats would not rent nor sell but that he had a fine proposition whereby she could exchange her two flats in Oakland for 160 acres of fine timber land in Idaho of the value of $14,000 owned by his wife; that the timber land was insured for $12,000; that an offer of $12,000 had been made for it, but that $12,000 was not enough and had been refused, and that this timber property of his wife was of much greater value than plaintiff's property; that it would be a good thing; that her flats were running down so that the only way she could get money would be in a trade. The plaintiff believed everything Crawford, the agent, told her about the timber land in Idaho and signed a deed exchanging her two flats valued at $7,500 for the Idaho timber land which the court found to be of a value not to exceed $1,000. Crawford was· a notary and took his wife's acknowledgment to the deed from her to plaintiff. Plaintiff made the exchange on the advice of Crawford, the husband of defendant, who told her not to talk to anybody about the deal, and without consulting any other person, as he told her that he was a man of honor and would do the very best for her in this deal. As soon as the exchange was made Crawford and his wife sold the Oakland flats and took a trip east. Plaintiff did not get her deed to the timber land until September, 1923, after the Crawfords returned from the east. Not being able to collect the interest on the $3,000 Crawford note, plaintiff placed the matter in the hands of her attorney, Lovett K. Fraser, to investigate. After investigation by her attorney she found the timber property to be of little value. Defendant Jennie C. Lewis Crawford had never seen the timber property herself, although she had owned it since 1914, and she had been

trying to sell it, through her husband as her agent, without success since that time. Plaintiff had the Idaho property appraised by S. S. Taylor, one of the appraisers who appraised the estate of Lewis, from which appellant received the property, and also had W. H. Herrick, the county assessor of the county wherein the timber land is located, go out with S. S. Taylor and appraise it. After viewing the property and making investigation they each appraised the property at $600. The court refused to allow the deposition of Taylor to be read in evidence on the ground that he was not an expert. Respondent contends that his deposition should have been received. The disposition of this question is of no moment, as W. H. Herrick, being county assessor and charged with the duty of appraising the property, is deemed adequately qualified, and his testimony is sufficient to support the finding as to the value of the Idaho land. This appraisement was made July 28, 1924, and was the first time plaintiff knew Crawford's statements were false. There was never any insurance on the timber of $12,000 and there was no option on it for $14,000, as stated by Crawford.

The court found that J. G. Crawford was the agent for his wife in making the exchange; that he made the representations; that the plaintiff relied upon the representations; that such representations were false; that the value of the Idaho timber land did not exceed $1,000 and that the value of the Oakland flats was $7,500.

Appellant assigns several reasons wherein the evidence does not support the findings and, further, "that, notwithstanding the finding of dual agency, it appearing that the fraud was practiced upon plaintiff by her own agent, the defendant neither participating in nor knowing it, and plaintiff's confessed negligence having made it possible, there can be no recovery," and that "a cause of action for rescission being pleaded for one fraud, and a cause of action for cancellation for a different fraud having been proved, the lower court erred in denying defendant's motion for a nonsuit."

The facts sufficiently support the finding of fraud and deceit. The fraudulent misstatement of value being sufficient (*Scott* v. *Delta Land & Water Co.*, 57 Cal. App. 320 [207 Pac. 389]; *Harris* v. *Miller*, 196 Cal. 8 [235 Pac. 981];

*Spreckels* v. *Gorrill,* 152 Cal. 383 [92 Pac. 1011]), the judgment must therefore be affirmed unless the latter assignments quoted possess sufficient merit to require a reversal.

It is true that plaintiff did testify that she did not agree to take the Idaho property and did not sign any agreement to that effect; that she did not know that she had signed a deed, that she thought that she was signing a paper to the effect that Crawford had given a correct report of this timber land, but plaintiff also testified that she did sign the deed and would not have signed it but for the representations made by Crawford, and that the deed was acknowledged by Crawford. Aside from the testimony of respondent, the testimony of Crawford and the instrument itself in evidence, establish the fact that she did sign and deliver the deed for the purpose of exchanging the properties. In determining the questions whether or not the respondent executed the deed to appellant for the purpose of such exchange and whether or not she relied upon the representations of Crawford, the court was not limited to a consideration of the testimony of respondent, but was at liberty to consider any and all evidence in the record in determining this and all issues in the case. ■ The trial court is the judge of the facts and may disregard or reconcile inconsistencies in the testimony of the party defrauded. The entire testimony of the party need not be disregarded or disbelieved because it may be found to be inconsistent or even false in some particulars (*Brandt* v. *Krogh,* 14 Cal. App. 39 [111 Pac. 275]; *Lindley* v. *Blumberg,* 7 Cal. App. 140 [93 Pac. 894]). ■ Furthermore, a court of equity may do exact justice between the parties (*Wills* v. *Porter,* 132 Cal. 516 [64 Pac. 896]), and can mold its decree to suit the exigencies of the case, and may determine the ultimate rights of the parties (*California Farm etc. Co.* v. *Schiappa-Pietra,* 151 Cal. 732 [91 Pac. 593]).

In view of the circumstances surrounding the transaction it is difficult to see how counsel for appellant can treat seriously his claim that "plaintiff cannot recover on account of a fraud practiced upon her by her own agent of which defendant had no knowledge, and which was made possible by plaintiff's own negligence." It is true that appellant testified that she had no knowledge of the contemplated exchange, but the court evidently did not believe this testi-

mony nor is it surprising that it did not. Appellant had owned this Idaho property since 1914, and, as stated by her husband Crawford, had been trying since then to sell it and had it listed for sale with him. Crawford brought respondent to his home during the negotiations leading up to the exchange and during the time he was trying to induce her to trade her property with his wife for her Idaho property and introduced respondent to appellant. According to appellant's testimony they never mentioned the exchange of properties—the only matter in which they had any common interest, each desiring to dispose of her property—but discussed physical ailments. They met again in Crawford's office, and at that meeting no mention was made of property. Appellant signed the deed conveying the Idaho land to respondent and entrusted it to her husband to exchange for the property of respondent, and also testified that her husband did not handle the exchange—that she never allowed him to handle her property. Appellant did not take the trouble to go and see respondent's flats; all she knew about them was that she had seen them from the street and that respondent had paid $6,300 for the property. She did not know whether the exchange was to be even or whether her husband was going to give anything to boot; that her Idaho land was worth $7,000. In other words, her husband brought respondent—a stranger to appellant— to call on her for no other purpose than a social call; that she deeded property worth $7,000 without knowing whether she was exchanging even or was to give a bonus and without knowing the condition of the property she was to receive in exchange. It is not surprising that the court gave no credence to this testimony nor that it drew the inference therefrom that appellant had knowledge of the fact that her husband was trading her property, which she unquestionably knew was of little value to respondent for property greatly in excess of the value of her Idaho land and also that she had knowledge of his false statements.

As to appellant's contention that the finding "that plaintiff was at the time of the exchange of the age of sixty-four years and infirm in mind and body" is outside the pleadings and unsupported by the evidence, it may be said that, conceding the contention to be correct, the finding is immaterial and in no way affects the judgment.

■ Appellant's claim that respondent is guilty of laches may be answered by saying that while the doctrine of laches applies equally to all frauds, each case must be considered on its own facts (*Dufour* v. *Weissberger,* 172 Cal. 223 [155 Pac. 984]); that in applying the doctrine after discovery it must be borne in mind that a distinction exists between actions in which relief is sought by way of rescission and other actions based on fraud, such as actions for damages, for accounting, for the recovery of money and the like (12 Cal. Jur. 796). Here, the Oakland flats having been sold to an innocent purchaser, plaintiff was merely seeking the money received from such sale on the return of the Idaho property. The court found that plaintiff first learned that the representations were false—which finding finds support in the evidence—on July 23, 1924, and sought restitution on September 30, 1924, two months thereafter. This delay in making demand under the circumstances was not unreasonable (*Munson* v. *Fishburn,* 183 Cal. 206 [190 Pac. 808]).

■ From what has been said it follows that there is no merit in appellant's final contention that the court erred in denying defendant's motion for a nonsuit.

We find no error in the record. The evidence sufficiently supports the finding of fraud and deceit, and the judgment rendered was the only one that in equity and good conscience could have been rendered.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 25, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1928.

All the Justices present concurred.