[Civ. No. 4636. Third Appellate District.—April 6, 1933.]

EDWARD S. LYNDS et al., Respondents, v. THE LOS ANGELES–DENAIR FARMS COMPANY (a Corporation), Appellant.

Henry Hay, A. C. Conway, Fred W. Morrison and Wm. B. Himrod for Appellant.

Youngworth, McClean & Hartman for Respondents.

KING, J., *pro tem.*—The action is for the cancellation of a contract and deeds, with damages, plaintiffs alleging that the contract of purchase of real estate was obtained from plaintiffs by means of fraudulent representations.

Judgment was given to plaintiffs for damages and for the annulment of the deeds of conveyance. A nonsuit was granted as to defendants Hattie K. Conway and Belle L. Moir, and judgment in favor of defendants A. C. Conway and W. H. Moir. The defendant corporation appeals.

The defendant corporation owned several hundred acres of land near Denair, California. Up to the time of the contract the land had never been irrigated and had been used for raising grain only.

The land in question, as stated in appellant's brief, "as all land in San Joaquin valley, is underlaid with hardpan at varying depths".

The defendant A. C. Conway, the president, and W. H. Moir, the secretary of the corporation, are alleged to have made the misrepresentations complained of.

The defendant corporation planned to divide its tract of 320 acres into eight tracts of 40 acres each, of which six were to be sold, and Conway and Moir were each to buy one tract. It was proposed that the purchasers were to put the land into grapes which were to be raised without irrigation, the setting and care of which to be upon a community or co-operative basis.

The plaintiff Edward W. Lynds was introduced to defendant A. C. Conway by one Pyle who had been attorney for each. Conway met Lynds about December, 1925, or January, 1926, and in April, 1926, they went to view the place. It appears that neither Lynds, Conway nor Moir had experience with farming or the raising of grapes. At the first conversation Conway gave Lynds a paper, of which the following is a partial copy:

"The owner has been advised by good competent authority that when the land is planted, as is proposed, to good, well rooted cuttings, the vines will produce in the two years in the neighborhood of 1 ton or better per acre, which would net the grower $50.00 per acre, that the third year would produce between two and three tons per acre, which would net the grower better than $100.00 per acre, and that during

the fourth year it would be increased at least another ton per acre and should net the grower from $125 to $250 per acre.

"The first three bearing years should yield the grower $300.00 per acre. If these estimates are correct and the land at the end of the fourth year is worth $500.00 per acre, the purchaser would have a property that had really netted him $800.00 per acre, including sales-price and crop for an investment to-wit: $300.00 per acre including purchase price, care, interest on investment, and taxes. On a forty-acre purchase, under these conditions it should net the purchaser in the neighborhood of $20,000.00 in four years from date of investment."

Several other conferences were had with Conway and with Moir and trips were made to the land by plaintiff, on one of which defendant Conway introduced Lynds to one Martin, a former tenant of the land, and who had farmed the same for twenty years. Martin, in the presence of Conway, made statements to Lynds regarding the land and its availability for the production of grapes, and the depth of the hard-pan.

Finally, on September 14, 1926, a contract was executed for the purchase by plaintiffs of 160 acres at $33,000, the contract providing that the seller should set the land to juice grape-vines before April 1, 1927. The land was conveyed in December, 1926. The land was prepared and set to grapes. On May 29, 1927, a count showed that 21,648 vines were dead. At this time Lynds was in Europe. After his return, and in September, 1927, he visited the place and testified that about two-thirds of the vines were dead and of the remainder some were in poor condition.

March 14, 1928, plaintiffs mailed a notice of rescission and this action follows.

The findings, 56 in number, cover 35 pages in the clerk's transcript. The reporter's transcript of the evidence comprises over 2,100 pages.

Appellant devotes a great part of its argument to criticism of the findings made by the court, and part of this criticism will be here noticed. As to finding II, which is criticised as not supported by the evidence, ample evidence appears to support it.

The next finding criticised is number V. This finds the execution of the contract, the rescission of which is asked

by the plaintiff, except that the court finds that it was executed by defendant corporation as seller and by plaintiff Edward S. Lynds as buyer, and was not executed by the other plaintiff, his wife, nor by the other defendants Conway and Moir. These objections are without merit.

Finding VIII is described by appellant's brief as "the crux of the whole case". In this the trial court finds that defendants Conway and Moir for the purpose of inducing plaintiff Edward S. Lynds to sign and enter into the contract and to make the payments therein provided for "then and there falsely and fraudulently stated and represented as follows". The court then finds practically in the language of paragraph VIII of the complaint as to the statements and representations made, except that where the complaint charges that it was represented that the land was "free from hard pan", the court qualifies the finding that it was represented to be free from "hard pan for sufficient depth to make the land adapted to and suitable for the commercial production of grapes of marketable quality without irrigation by artificial means".

A careful and painstaking search of the voluminous transcript discloses that there is evidence, if believed by the court, to support each and every statement in this finding. This court does not undertake to say that there is a preponderance of the evidence sufficient to prove satisfactorily the facts found, and such is not its function. The trial court had the witnesses before it, was able to judge as to their credibility, their interest and their opportunities for observation, and if there be evidence in the record to support a particular finding, it is not the duty of this court to set aside the finding of the court or the verdict of the jury on the facts. (*Fales* v. *New York Life Ins. Co.,* 128 Cal. App. 201 [17 Pac. (2d) 174]; *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157]; *Clopton* v. *Clopton,* 162 Cal. 27 [121 Pac. 720].)

The same observation may be made to the other findings challenged by appellant in its voluminous and ably presented briefs.

Appellant, however, presents another point which is most earnestly argued. It is to the effect that the finding that the land was represented to be of such kind and character as to be suitable for the commercial growing and

production of grapes, and that the land was free from hard-pan for a sufficient depth to make it so adapted and suitable for grapes, is a finding on a mere matter of opinion; that the statements found to have been made were not statements by the defendants Conway and Moir that the land was of such character, and that the hard-pan was of such depth—but only that in the *opinion* of the officials of the corporation this was the case. It is also argued that statements as to the profit to be realized from the farming of the land to grapes are also expressions of opinion and not representations of facts; and further, that these representations were made from information given by others, and not statements by Conway and Moir of facts. That all these matters call for the exercise of judgment. The argument on these matters is sufficiently answered by a citation of cases holding otherwise, such as *Scott* v. *Delta Land & Water Co.*, 57 Cal. App. 320 [207 Pac. 389]; *Herdan* v. *Hanson*, 182 Cal. 538 [189 Pac. 440]; *Davis* v. *Butler*, 154 Cal. 623 [98 Pac. 1047]; *Thomas* v. *Hacker*, 179 Cal. 731 [178 Pac. 855]; *Stone* v. *McCarty*, 64 Cal. App. 158 [220 Pac. 690]; *French* v. *Freeman*, 191 Cal. 585 [217 Pac. 515].

The trial court found that these representations were made as representations of fact and not the expression of an opinion.

Appellant urges that plaintiff has been guilty of laches in seeking rescission. The facts are that in August, 1927, plaintiff found many of the vines dead; thereupon began an investigation, resulting in his notice of rescission dated March 14, 1928. Even without reciting the facts he learned from August to March, this does not seem to show undue delay.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1933.