[Civ. No. 5572.   Fourth Dist.   Jan. 8, 1958.]

SARA N. HODGESON, Appellant, v. ROLAND H. BRANT et al., Respondents.

T. L. DeBord and Wilson & Wilson for Appellant.

Fullerton & Morris for Respondents.

MUSSELL, J.—This is an action to rescind the sale of real and personal property, consisting of land improved with a 14-unit motel building, a separate building used as a manager's apartment, and a swimming pool.

On February 7, 1955, the defendants, as sellers, and plaintiff, as buyer, executed escrow instructions by which defendants agreed to sell the property involved to plaintiff for the sum of $125,000. Plaintiff paid cash in the sum of $36,250 and executed a trust deed, note, and chattel mortgage on the personal property for the balance. The escrow was closed and plaintiff took possession of the property on March 1, 1955. On May 4, 1955, plaintiff served notice of rescission

of the sale upon defendants and, upon their failure to rescind, plaintiff filed her complaint herein, alleging that the defendants misrepresented the condition of the property and its income and concealed the fact that improvements were made upon filled ground and without the requisite permits, in violation of the laws and ordinances applicable to the construction of such improvements. On June 8, 1955, the west retaining wall of the property collapsed, carrying the swimming pool with it, and on July 26, 1955, plaintiff filed an amended complaint, including allegations therein that the retaining wall had fallen and that the pool had been destroyed.

On May 3, 1956, at the conclusion of the trial, the court made the following minute order:

"In this action the court will find as follows:

"Construction defects of swimming pool were not known to defendants at time of sale to plaintiff; Other construction defects are trivial in nature, and do not justify rescission; Representations made by defendants to plaintiff re income were substantially true; Nonexistence of permits, and noncompliance with building codes do not impute knowledge of structural defects.

"Judgment in favor of defendants. Counsel for defendants to prepare and submit proposed Findings, Conclusions and form of judgment."

On June 4, 1956, findings and judgment in favor of defendants were filed and this appeal followed.

In 1952, during the progress of the construction of the motel by defendants, the entire grade level of the property was raised and defendants, in lieu of a ramp then on the property and as a variation from the construction plans, constructed a retaining wall of the maximum height of 12 feet, 8 inches, along the west property line and also walls for a swimming pool, utilizing part of said retaining wall as the west wall of said pool. This retaining wall did not conform to the building code requirements in that it had insufficient structural strength to withstand the pressures to which it was subjected and on June 8, 1955, it collapsed, as did a part of the swimming pool.

On July 17, 1953, while the construction was in progress, the building inspector of the city of Barstow served upon the defendants a notice requiring them to submit construction details to the department and obtain a permit before completing or using the swimming pool. Defendants failed

to submit construction details to the city and did not obtain the requisite permit.

In 1953, when construction ceased, there was a retaining wall over 12 feet high, constructed of concrete blocks, along the west line of the property, a portion of which formed the west wall of a concrete block box, having a concrete slab at the bottom, designed to be used as a swimming pool, and the parking area was built upon filled ground.

Mr. Brant testified that in the spring of 1954 they undertook the completion of the pool; that the south end was changed by constructing a new wall on the slab approximately 3 feet north of the original south wall, a beam was laid on the slab along the west and north walls, a new 8 inch wall was constructed on top of this beam, sand and dirt were deposited to the depth of 4 feet on top of the slab and a plastic liner was laid on the sand and dirt; that water was put in the pool for the first time on June 29, 1954.

On July 27, 1954, the chief sanitarian in the office of the director of sanitation in the health department of the county of San Bernardino orally informed the defendants that the pool was constructed in violation of the State Swimming Pool Act and on August 4, 1954, he wrote a letter to defendants, which, in part, is as follows:

"Subject: Swimming pool constructed without Health Department approval.

"Dear Mr. and Mrs. Brant:

"This letter will confirm our conversation of July the 27th, 1954, in that the swimming pool at your motel was constructed in violation of the State Swimming Pool Act, in that prior to construction, plans were not submitted to the Health Officer for approval; further, a local city permit was not secured, and no local inspection service was used during the construction period.

"At this time we are notifying you that any further use of the swimming pool by motel guests or others than your immediate family will be a violation of the State Swimming Pool regulations."

On May 16, 1955, the city building inspector examined the buildings on the premises and found that the supports, girders, braces and electrical equipment were defective. He then served a correction notice on the plaintiff.

The uncontradicted evidence shows that the apartment on the premises, the parking area, the retaining wall

and the swimming pool were poorly constructed. In this connection Mrs. Brant testified that the posts supporting the porch at the northeast corner of the motel had dropped and that she had wedges inserted between the top of the posts and the roof; that there was a 12-foot fill at that point; that the sidewalk or floor of the porch had also sunk; that she did not know what she told plaintiff about the condition of the property; that she did not tell plaintiff that the pool was constructed without a permit or that she had received the letter of August 4, 1954, advising her that the operation of the pool was in violation of the Swimming Pool Act; that she did not tell plaintiff anything in respect to the construction of the pool or that the west wall was built without a permit; that she informed the plaintiff that the property was made far superior to any motel in town; that the property was "well built," a "good piece of property"; that the property was "in good condition"; and that there was "no better built piece of property in Barstow."

Plaintiff testified that on February 7, 1955, when she went to look at the property with Mr. Cox (defendants' broker), he told her that the property was a "good little motel"; that it was very well built and that they took in $30,000 in 1954; that she was well acquainted with Mr. Cox and had faith and confidence in anything he told her; that on that morning (February 7, 1955) she was brought into contact with Mr. and Mrs. Brant and they told her that they had the finest and best built motel in Barstow; that it was in A-Number-1 condition; that they told her about the swimming pool "how well it did"; that Mrs. Brant told her how "good it was doing that summer when they had the swimming pool" and that it would bring her in a lot of money. Plaintiff testified that she took possession of the property March 1, 1955, and after she started to work there, she noticed a "lot of defects with the place"; that when she tried to wash off the porch floor, the water stood in puddles in the parking area; that when she visited the property on February 7 there was no water in the pool and that on March 25, 1955, when water was placed in it for the first time, the water leaked through the retaining wall and that the pool was patched three times. Plaintiff further testified that she was not familiar with building construction; that she did not know prior to the close of escrow that the apartment was not properly constructed, and did not know that the retaining wall was constructed without a permit or that it was defective, that the parking area was constructed on filled ground, that no plans for the pool had been sub-

mitted to or approved by the health department, that no permit for the construction of a retaining wall had been issued by the city, that the bottom of the pool was on filled ground, or that the defendants had been notified that the construction and operation of the pool was in violation of the Swimming Pool Act. She testified further that had she known such facts, she would not have bought the property; that she relied upon the representations of the defendants, and that had the representations not been made, she would not have purchased the property.

It is alleged in paragraph two of the second cause of action that defendants falsely and fraudulently concealed from plaintiff the fact that no swimming pool permit had been obtained and that said concealment was for the purpose of inducing plaintiff to enter into the agreement of sale; that the improvements and the parking area on said land were built on filled ground, and that the foundation of the main building had settled and caused cracks to appear therein and water to accumulate on the parking area; that defendants made false representations to plaintiff that said property was in all respects in A-1 condition; that the swimming pool was perfect; that all of said representations were made for the purpose of inducing plaintiff to purchase said property; that plaintiff had full confidence in the statements and representations made to her by defendants and would not have made the purchase had it not been for such representations. These allegations were found by the court to be not true, a finding in direct conflict with the uncontradicted evidence. It was further found that the defects relating to the office and dwelling were not material defects and were trivial in nature. There is some substantial evidence to support this finding. The court further found that the west retaining wall, a part of which also constituted the west wall of the swimming pool, did not conform to building code requirements in that it had insufficient structural strength to withstand the pressures to which it was subjected and said wall collapsed on June 8, 1955. However, in this connection the court further found that the defendants did not know or have reason to know or believe that said wall was structurally insufficient and susceptible to collapse; that they believed said construction was sound and adequate; that the structural defect in said retaining wall was latent and its existence was unknown to and unsuspected by the defendants. The court concluded that plaintiff was not entitled to a rescission of the contract and

this conclusion was apparently based on the theory that it was necessary to show knowledge on the part of the defendants of the falsity of the representations made by them as to the condition of the property. ■ However, as is said in *Muller* v. *Palmer,* 144 Cal. 305, 312 [77 P. 954] (quoting from 2 Pomeroy's Equity Jurisprudence, § 887) :

" 'It is settled in equity by an overwhelming array of authority, that where a person makes a statement of fact which is actually untrue, and he has at the time no knowledge whatever of the matter, he is chargeable with fraud, and his claim to have believed in the truth of his statement cannot be regarded as at all material. The definite assertion of something which is untrue concerning which the party has no knowledge at all is tantamount in its effects to the assertion of something which the party knows to be untrue.' "

In *Lombardi* v. *Sinanides,* 71 Cal.App. 272, 280 [235 P. 455], it is said (quoting from *Scott* v. *Delta Land etc. Co.,* 57 Cal.App. 320, 328 [207 P. 389, 392]) :

" 'Aside from the provisions of section 1572 of the Civil Code, it is not established by the weight of authority in the United States that a party to a contract may innocently and with belief in the truth of his statements misrepresent to the opposite party conditions material to the consideration to be rendered by the former and escape liability. In a civil action the good faith of the party who procures the assent of another to the making of a contract by material misrepresentations is of no moment.' "

In *McMahon* v. *Grimes,* 206 Cal. 526, 535 [275 P. 440], the court said:

"As was said in *Muller* v. *Palmer, supra,* quoting from the early case of *Alvarez* v. *Brannon,* 7 Cal. 504 [68 Am.Dec. 274], 'But it is equally true that, whether a party thus misrepresenting a material fact knew it to be false or made the assertion without knowing whether it were true or false is wholly immaterial. If a party asserts that as true which he does not know to be true, it is a false representation. If he intends simply to state his belief upon information then he should state it in that precise form, so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement in the form in which he makes it. If he states a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his peril, and must make good his assertion.' "

In *Kruse* v. *Miller*, 143 Cal.App.2d 656, 659 [300 P.2d 855], the court quoted from *Vance* v. *Supreme Lodge F. B.*, 15 Cal.App. 178, 182-183 [114 P. 83] as follows:

"It is very uniformly held, however, that where any relation of confidence and trust exists between the parties which demands that the information communicated respecting the subject of their dealings be full and complete, any concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action."

In *Sullivan* v. *Helbing*, 66 Cal.App. 478, 483 [226 P. 803], the court said:

"Though one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure (12 R.C.L., 'Fraud and Deceit,' § 71)."

The judgment herein denying rescission of the contract of sale of the property involved is contrary to the undisputed evidence and the rules announced herein. The swimming pool, the retaining wall and the parking area are integral parts of the property sold. They were poorly constructed, a fact unknown to plaintiff. She relied upon the representations of the defendants and their broker as to the condition of the property. While the defendants were under no duty to speak as to the condition of the property, they were bound by the representations made. The defects in the construction of the retaining wall, swimming pool and parking area materially affected the value of the property and under the evidence, plaintiff was entitled to a rescission of the contract. Since we are of the opinion that the judgment must be reversed for the reasons stated, it is unnecessary to pass upon other points raised by appellant.

Judgment reversed.

Barnard, P. J., concurred.

A petition for a rehearing was denied January 30, 1958, and respondents' petition for a hearing by the Supreme Court was denied March 6, 1958.